Staples, J.
The only question to be decided in this case is, Whether an action for a breach of promise of marriage lies against the personal representative of the promisor.
The counsel for the defendant in error insist that at common law the personal representative may sue or be sued upon all contracts of the deceased, especially where the breach has been incurred in the lifetime of the parties, and that a contract founded on a promise of marriage is no exception to the rule. They further insist that if they are mistaken in this view, and the action is not maintainable according to the rules of common law, it is plainly provided for by statute.
These two propositions may be considered in the order in which they are stated. At common law, if an injury was done either to the person or the property of another, for which damages could only be recovered in satisfaction, the action died with the person to whom or by whom the wrong was done. In other words, where the declaration imputed a tort to the person or property of another, and the plea must have been not guilty, the maxim was actio personalis moritur cum persona. According to the earlier authorities, this maxim of the common law is only to be understood of a tort, and had no application to causes of action arising upon contract, especially if broken in the lifetime of the decedent.
The proposition that the personal representative is liable upon every contract of the deceased was, however, always to be understood as not applying to those cases in which *205 the damage consisted in the personal suffering of the deceased, or in a personal wrong done by him, unless, indeed, some injury to the personal estate could be stated on record. So that whenever the injury is merely personal, whether resulting from breach of contract or from tort, the maxim, actio personalis moritwr cum persona prevails. 2 Williams on Executors, bottom pages 786-7-790; 4 Minor Inst., Part I, pages 793-4; Broom’s Legal Maxims, side pages 907-8-9-10; Wharton’s Legal Maxims, page 19.
One of the earliest cases on this subject it that of Chamberlain v. Williamson, 2 Maule & Sel. 408, in which it was held that an administrator cannot maintain an action for a breach of promise to the plaintiff’s intestate where no special damage is alleged. This case has always been recognized as a leading one. Lord Ellenborough took time to examine the decisions, and afterwards delivered a carefully prepared opinion. He said “the action was novel in its kind, and not an instance had been cited or suggested in the argument of its having been maintained, nor had he been able to discover any by his own researches or inquiries; and yet frequent occasions must have arisen for bringing such actions.” He further said, “ executors and administrators are the representatives of the temporal property—that is, the debts and goods—of the deceased; but not of their wrongs, except where these wrongs operate to the temporal injury of the personal estate.” Where the damage done to the personal estate can be stated on the record, that involves a different question. If this action be maintainable, then every action founded on an implied promise to a testator, where the damage consists in the previous personal suffering of the testator, would be also maintainable by the executor or administrator. All injuries affecting the life or health of the deceased, all such as arise out of the unskilfulness of medical practitioners, the imprisonment of the party brought on by the *206 negligence of his attorney—all these would be breaches of the implied promise by the persons employed to exhibit a proper skill and attention. He was not aware, however, of any attempt on the part of the executor or administrator to maintain an action in any such case.
This opinion of Lord Ellenborough was delivered more than sixty years ago. The researches of counsel have not produced a case during all the intervening period controverting the opinion or the conclusions in Chamberlain v. Williamson. On the other hand, we have the opinions of all the commentators and text-writers, and the decisions of several courts of the higest respectability’and standing, fully sustaining the case of Chamberlain v. Williamson. One of these is Stellins v. Palmer, 1 Pick. R. 71, in which it was expressly held that an .action for breach of promise of marriage does not survive against the administrator of the promisor where no special damage is alleged. The supreme court of Massachusetts, after quoting the language of Lord Mansfield in Hambly v. Trott, Cowp. R. 376,goes on to say: “The distinction seems to be between causes of action which affect the estate, and those which affect the person only* the former survives for or against the executor, and the latter die with the person. According to these distinctions an action for the breach of promise of marriage would not survive, for it is a contract merely personal; at least it does not necessarily affect property. The principal ground of damages is disappointed hope; the injury complained of is violated faith, more resembling, in substance, deceit and fraud than a mere common breach of promise. The damages may be, and frequently are, vindictive, and if they could be proved against the executor, might render the estate insolvent, to the loss and injury of creditors. Por these and other reasons, it has been settled in England that such an action does not survive for an executor. If this was rightly settled, it is decisive, for the law is unquestionably the same whichever party may die.”
*207 The case of Smith v. Sherman, 4 Cush. R. 408, involved • i-iii • i i-ii i identically the same • question, and was decided the same way, Chief Justice Shaw delivering the unanimous ion of the court.
In Lattimore et al., ex'ors of Rogers, v. Simmons, 13 Serg. & Rawle, 183, substantially the same question was involved, and the same conclusion reached, as in the Massachusetts decisions. In that case, however, the action had been brought in the lifetime of the contracting parties. The defendant having died during the pendency of the action, the question was, whether it survived against his executors ?
Tilghman, C. J., in delivering the opinion of the court, said : “ The counsel for the plaintiff rely on the contract in this case, and on some general dieta that all actions founded on contract survive. The position is too general. If true, it must extend to contracts implied as well as expressed. Suppose the case of a physician or surgeon, who, by unskilful treatment, injures the health of a patient. Here is a breach of an implied contract, aud yet it will hardly be contended that in case of death the cause of action would survive. It seems reasonable, therefore, to confine the survivor of action to cases in which actual property is affected, even though there be an express contract. A promise of marriage is undoubtedly a contract, though one of a singular nature.. By its breach, the feelings of the injured party may be deeply wounded, but it is not perceived that his property is in any manner affected. I speak now of the case as stated on this record.”
After this array of authorities—English and American —after the failure of counsel to produce a single case, or even the dictum of one author or writer to the contrary, it would seem the height of rashness to insist that an action of this sort can be maintained at common law against an executor or administrator without averring and proving *208 some sPec'a^ damage sustained. Whether upon such an averment the action can be maintained has not been fully Nor is it necessary now to decide the point, as the question does not arise upon this record,
It only remains to inquire whether the rule of thecommon law has been changed by statute.
The provision relied on by the defendant in error is contained in the 19th section, chap. 126, Code of 1873: “A personal representative may sue or be sued upon any judgment for or against or on any contract of or with his deceased.”
The learned counsel did not claim that this enactment had altered the common law rule. On the contrary, he was inclined to consider it merely declaratory of the common law. He insisted, however, that its terms are broad enough to cover any contract of the deceased, and the courts are bound so to construe it.
It will be universally coneeded, that, in the interpretation of statutes, the leading idea is to find out the intention of the legislature. In ascertaining that intention, we must, of course, look at the terms used. As a general rule, where they are explicit, the courts are not at liberty to say that the legislature intended something different from what the language expresses. This general rule is, however, subject to the qualification that if the court is satisfied, the literal meaning of the words would extend the act to eases the legislature never designed to include, it will restrain their operation within narrower limits so as to carry out what was the manifest intention. Brewer v. Blougher, 14 Peters R. 178.
It must be borne in mind that this provision has been substantially in force since 1785. The only difference between the act of 1785 and the present law is, that the former declares that executors or administrators might sue or be sued “on all personal contracts of the deceased,” whereas the word “personal” was omitted at the *209 revisal of 1849. Whether this change be material or not. . . ... , , & ’ it has no effect upon the present question.
Although nearly a hundred years have passed since statute was passed, no case has been found in which it has , . been held to apply to actions for breach of promise of marriage against the personal representative of the promisor. Certainly our reports furnish no such case. It is safe to say the profession generally have not entertained any such idea. These considerations, although by no means conclusive, are certainly entitled to some weight in the interpretation of the statute.
Although a breach of promise to marry is a violation of contract, it is yet essentially a tort to the person, and comes so fully within the reason and influence of the principle governing actions ex delicio, it is impossible to distinguish between them.
In all other cases of breach of contract, as a general rule, the damages are limited to the direct pecuniary loss resulting from the breach, and no regard is had to the motives or feelings of the parties. But in the action for breach of promise of marriage, though in form ex contractu, this rule does not prevail. It being impossible to fix any rule or measure of damages, it is permissible to take into consideration all the circumstances of the case, the loss of comfort, the injury to the feelings, affections and wounded pride of the plaintiff. The jury being the proper judges of damages, having unlimited discretion over the subject, the court will not interfere with their verdict unless there be some reason to impute either undue prejudice, passion or corruption. Field on Damages, §§ 534, 5 and 6; Sedg. on the Measure of Damages, side page 210, top 248. '
If, under the statute, the action survives against the personal representative of the promisor, it must also survive in favor of the personal representative of the promisee. In such case it might become a grave question whether the *210 latter would not be guilty of a devastavit in failing to sue for the benefit of creditors and distributees. It would certainly be the first instance on record of an action prosecuted by one personal representative against another for the recovery of mere vindictive damages as assets for the benefit of creditors.
In the case of Dillard v. Collins, 25 Gratt. 343, this court held that a right of action, which is merely personal and dies with the party, is not transferred to an assignee in bankruptcy; that the assignee in many respects stands in the same relation towards the bankrupt’s estate as that of an executor towards the personal estate of the testator. The distinction was there taken between rights of action for torts to the person, which do not survive, and rights of action for injuries to property, which do survive. The former, it was said, do not pass to the assignee. But if the proposition now contended for be correct, a right of action founded on a breach of promise of marriage would pass to the assignee in bankruptcy, and be the subject of a suit against a personal representative for the benefit of the bankrupt’s creditors.
As was said by Lord Mansfield in Hambly v. Trott, Cowp. R. 376, all public and private wrongs die with the offender. And this was pre-eminently a wise rule of the common law, founded on considerations of the soundest public policy. -In actions based upon torts to the person, such, for example, as slander and breach of promise of marriage, the motives and feelings of the parties are often involved, everything relating to their character and conduct is the subject of investigation. Sometimes the chastity of the plaintiff is assailed with every circumstance of aggravation; and, on the other hand, the bad faith of the defendant is made the occasion of the severest animadversion. In this class of cases, not unfrequently the most private and sacred family relations are unveiled and exposed to public gaze and criticism. The common law *211 wisely proceeded upon the maxim that with the death of either party these investigations should cease, and when the injured party is dead, no pecuniary damages can compensate for violated faith, wounded pride and outraged feelings, and that the courts should never become the arenas for unseemly controversies involving the reputation and the feelings of those who are in their graves.
The legislatures and the courts have wisely adhered to this rule through all the innovations of modern times. There may be exceptional cases—cases of undoubted hardship; but the rule is found to be generally wise and salutary in its operation.
The learned counsel for the defendant in error has depicted in eloquent and forcible language the injury often resulting from breach of promise of marriage, loss of position and health, and not unfrequently pecuniary ruin; and for these injuries it is said the party aggrieved ought not to'be deprived of compensation by the death of the offender. The argument of the learned counsel applies with much greater force to cases of slander and libel, malicious prosecution and false imprisonment, which often involve loss of character, station and health, as also loss of fortune.
In all this class of injuries it may be said the injured party should not be denied redress because the offender may die, and in many cases this would be perfectly true. But no one seriously thinks of changing the law on the subject; because all understand that such a change would be productive of far greater mischief than benefit.
In the state of New York they have a statute substantially the same as ours, which was the subject of consideration in Wade v. Kalbfleisch, 58 New York R. 282. It was there held that an action for a breach of promise of marriage is not an action upon a contract within the meaning of the statute, and cannot be revived against the personal representatives of the promisor. Church, C. J., in delivering the opinion of the court, said: “ The wrongs *212 for which this statute authorizes an action to be brought by or against executors are such as affect property or property rights and interests; or, in other words, such as affect the estate. Executors represent property only. They can take only such rights of action as affect property, and cannot recover for injuries for personal wrongs. Although, in form, it resembles an action on contract, in substance it falls within the definition of the exception as an action in the case for personal injuries.”
These views of the highest court of the state of New York, in the construction of a statute like our own, upon a question of this sort, are deservedly entitled to great respect. Upon a doubtful question they would be decisive of the case.
In considering this question, we have not deemed it necessary to inquire whether our statute was designed to provide for cases not reached by the common law, or is simply declaratory of that law. Because in either aspect, cases of breach of promise of marriage are not embraced by its provisions.
It was asked in the argument what possible use or benefit is there in the statute. This court is not called on to hunt up imaginary cases for the application of the statute. All we have to do is to decide upon its operation and effect as the quéstion comes before us. Every one familiar with the doctrines of the common law knows that difficulties constantly occur in determining whether the action survives to the personal representative, or to the heir upon a covenant real. Eor example, it has been held that if the covenant has been broken in the lifetime of the testator, the right of action passes to the executor; otherwise, however, if the substantial damage has taken place since his death. And so at common law no liability attached to the executor where the contract was personal to the testator unipsr a breach was incurred in his lifetime. Williamson Executors, 802, 5 and 6; 2 Lomax on Executors, top 430, mar. 254.
*213 Whether the statute in these and kindred eases was intended to give a right of action to the personal representative without regard to the time of the breach of contract, or was intended to remove all doubts and uncertainties as to the right of action, or was simply and purely affirmative of the common law, we repeat, it does not concern us now to decide. And these examples are simply given to show there was good reason for such an enactment without applying it to cases of breach of promise of marriage.
We are, therefore, of opinion that the circuit court erred in overruling the demurrer to the declaration, and in sustaining plaintiff’s demurrer to the defendant’s plea of the statute of limitations, and as a necessary consequence, it erred in refusing to set aside the verdict and grant the defendant a new trial. The judgment must therefore be reversed, the verdict set aside, and a new trial awarded. This court, proceeding to enter such judgment as the circuit court ought to have entered, sustains the demurrer to the declaration. It cannot, however, enter a final judgment in the case, because the plaintiff may be able to state on the record some special damage, as to which this court expresses no opinion. She ought to have leave to amend her declaration. And the cause is remanded to the circuit court that the case may be further proceeded in in conformity with the views herein expressed.