[No. 14147.  Department Two.  August 22, 1917.]

MATTIE RIEGER, *Appellant*, v. ROBERT ABRAMS,
*Respondent*.[1]

JUDGMENT — RES JUDICATA — MATTERS CONCLUDED — IDENTITY OF
ISSUES—SEDUCTION AND BREACH OF MARRIAGE PROMISE.  Where, in an
action asking damages for seduction, the ultimate facts setting up
seduction under a promise of marriage accepted by plaintiff, by
means of which an illicit course of conduct was induced and main-
tained during the engagement, are in substance the same as the
ultimate facts in a subsequent action asking damages for breach of
the marriage promise, setting up the same contract, seduction and
course of conduct, verdict and judgment in the former action is *res
judicata* and a bar to the second action; as the allegations as to
the damages can be considered only as conclusions of the pleader.

SAME.  In such a case, interlocutory rulings of the court as to
the measure of damages are not controlling as to the issues actually
litigated, where the case finally went to trial upon the issues raised
by the final pleadings, and the plaintiff had her day in court as to
any errors made in the trial of the former action.

Appeal from a judgment of the superior court for King
county, Jurey, J., entered February 27, 1917, in favor of the
defendant, dismissing upon the pleadings an action for
breach of marriage promise, tried to the court.  Affirmed.

*F. W. Crary* and *Carl E. Croson*, for appellant.

*Hughes, McMicken, Ramsey & Rupp*, for respondent.

PARKER, J.—The plaintiff, Mattie Rieger, seeks recovery
of damages from the defendant, Robert Abrams, for breach
of promise of marriage, which she alleges was made by him
and accepted by her.  Judgment was rendered by the su-
perior court of King county in his favor, denying the relief
prayed for by her, upon the facts admitted in the pleadings.
The judgment was rendered upon motion made in that behalf,
and rested upon the theory that the facts so admitted showed
that, in another action prosecuted by her in that court, a

[1]Reported in 167 Pac. 76.

judgment was rendered which became a final adjudication of her rights in the premises. From this disposition of the cause, the plaintiff has appealed to this court.

The record before us contains so many pleadings, amendments, motions, and interlocutory orders, both in this action and in the former one (those in the former being brought into this one by allegations in the pleadings herein), that we have found it necessary to exercise caution to the end that the real question here for determination be not clouded by irrelevant facts. Let us first notice the real issues ultimately presented by the final pleadings in each of these actions for determination upon the merits, leaving out of mind all preceding pleadings, motions, and orders. We think it will appear as we proceed that the latter are of no moment here.

Appellant, in her final amended complaint in this action, after alleging that, at all times in question, both she and respondent were over twenty-one years old and unmarried, alleges:

"That on or about the 1st day of August, 1915, at said city of Seattle, defendant proposed marriage to plaintiff, and upon his urgent solicitations, representations to plaintiff and his request the plaintiff thereafter, to wit, on or about the 15th day of August, 1915, in good faith, accepted said proposal, and she and said defendant thereupon mutually and verbally agreed, in consideration of love and affection, and of reasons aforesaid, to intermarry each with the other, within a reasonable time thereafter, which defendant then and there represented to plaintiff would be as soon as he could arrange his business affairs therefor, not longer than three or four weeks from said last mentioned date. . . .

"That on or about the 1st day of September, 1915, at the city of Seattle, the defendant, by reason of the relation and confidence which plaintiff had learned to repose in him as aforesaid, and by reason of the affection which she had grown to feel for him, and of their constant association together, and by reason of defendant's promise and their engagement to marry, did then and there by many endearments, and solicitations, and under promise of marriage, and by subtly inducing plaintiff to drink intoxicating liquors to wit: beer

and wine to the extent of stupefying and intoxicating her; and against plaintiff's consent and insistent remonstrance, wickedly seduce, debauch and carnally know her, and thereafter, by repeated promises of early marriage, induced plaintiff to continue said sexual intercourse with said defendant, whereby she became sick and pregnant with child.

"That at all times prior to said last mentioned date, plaintiff had been a chaste and virtuous woman, happy in her self-esteem and the confidence and esteem of her said child and friends, and theretofore having at all times borne an unquestioned reputation for chastity and virtue.

"That said defendant has disregarded, and still disregards, his said promise of marriage with said plaintiff, and did as aforesaid falsely contrive to and subtly deceive said plaintiff as aforesaid, and has not taken her to be his wife, although reasonable time for the purpose has long since elapsed, and though frequently requested by said plaintiff, said defendant, on or about the — day of January, A. D. 1916, positively refused to make his said promises good, he has hitherto refused, and still refuses, to marry the plaintiff.

"That by reason of said defendant's failure to keep and perform his promise and agreement to marry this plaintiff, she has lost all the advantage and social position which said marriage afforded her, and caused her to suffer great pain, humiliation, mental anguish and mortification, all to her great damage in the sum of fifty thousand ($50,000.00) dollars."

Respondent, in his final second amended answer to appellant's amended complaint, after denying the allegations thereof above quoted, alleges, as a second affirmative defense, facts showing the commencement and prosecution to final judgment in the superior court for King county of an action by appellant against him as follows:

In appellant's final third amended complaint in that action, a copy of which is made part of respondent's affirmative defense in this action, she alleged:

"That on or about the 1st day of September, A. D. 1915, at the instance and request of defendant, plaintiff and defendant mutually agreed and were engaged to be married, and each of them was qualified to enter into the marriage re-

lation with the other; that while so engaged, on or about the said 1st day of September, 1915, said defendant by means of blandishments and protestation of love and affection for her, and her confidence and belief in defendant's fidelity therein, and particularly by promising her that he would within a few weeks marry her, and by subtly and wickedly inducing plaintiff to drink intoxicating liquors, to wit: beer and wine to the extent of her becoming stupefied and intoxicated, did thereby seduce and debauch this plaintiff and thereby induced her to have sexual intercourse with him, the said defendant, she, at the time of said sexual intercourse having at all times theretofore been of chaste character.

"That thereafter said defendant continued to maintain illicit sexual relation with said plaintiff by constantly repeating his promise of marriage and urging upon her that it would be but a short time before they would be married and that no harm be done her and that it was his purpose to make her his wife and shower upon her his affections, all of which promises were untrue and fraudulently made for the purpose of deceiving, seducing and injuring her health, character and reputation, as aforesaid, and defendant has at all times since refused to marry said plaintiff.

"That by reason of said seduction and illicit sexual relation, plaintiff became sick and pregnant with child and will remain sick for a long time to come; that by reason of said seduction and resulting pregnancy, this plaintiff was disgraced, humiliated and made sick and depressed and despondent and subject to social ostracism, and has suffered loss in her character and reputation and the esteem and confidence of her said daughter, and her chances of future marriage, all of which was and is to her injury and damage in the sum of forty thousand ($40,000.00) dollars."

Respondent answered in that action, denying the allegations of appellant's final third amended complaint therein, a copy of which answer is made part of his affirmative defense in this action. Upon the issues so made in that action, trial was had in the superior court for King county sitting with a jury, resulting in verdict and judgment therein awarding appellant $500 damages. Shortly thereafter respondent paid that judgment, including all costs taxed therein against him, and satisfaction thereof was duly entered of record.

In her amended reply to this affirmative defense set up by respondent in this action, appellant admits, as alleged by respondent, the filing of her second amended complaint and the filing of appellant's answer thereto as constituting the final pleadings in that action, the rendering of the final judgment therein awarding her $500 damages, and the payment of that judgment by respondent. Appellant also, in her reply, makes some allegations as to certain pleadings, motions, and orders filed and made in that action, but all of which preceded the filing of her third amended complaint therein and respondent's answer thereto, which became the final pleadings therein.

The argument of counsel for appellant proceeds upon the theory that the former action was one to recover damages for seduction only, while this action is one to recover damages for breach of promise of marriage only, and that they are, therefore, necessarily two separate causes of action, the former resting in tort and this one resting in contract. We may concede that the injury flowing from seduction alone is the result of a tort, and that the right of recovery for such injury is independent of any contractual obligation. We may also concede that the injury flowing from a breach of promise of marriage results from the violation of a contractual obligation, and that the right of recovery thereon rests in contract. But it does not follow that, because of this technical distinction between two such causes of action, the facts giving rise to the right of recovery thereon may not be so intimately related as to constitute in fact but one cause of action; or we might better say, so intimately related as to entitle the injured party to but one recovery. If a given state of facts entitles one to recover damages upon the theory that the right to recover rests in tort, and the same state of facts entitles one to recover upon the theory that the right of recovery rests in contract, it would seem plain that recovery could not be twice had simply because the facts would support recovery upon both theories. This seeming peculiar uniting of the recovery of damages for seduction and breach

of promise of marriage is not only admissible but, as we view the law, when the facts are the same upon which recovery for seduction and recovery for breach of promise of marriage are sought, it is compulsory that such recovery be sought in one action, in the sense that a judgment awarding damages in an action upon such a state of facts becomes a final adjudication of the plaintiff's entire right of recovery thereon, regardless of how plaintiff may be pleased to characterize her cause of action or pray for relief therein.

While an action to recover damages for breach of promise of marriage, in a technical sense, arises out of the breach of a contract obligation, it is in its essence an attempt to recover for a tortious wrong. In 2 Sedgwick, Damages (9th ed.), § 637, it is said:

"The action for breach of promise of marriage, as has been already said, though nominally an action founded on the breach of an agreement, presents a striking exception to the general rules which govern contracts. This action is given as an indemnity to the injured party for the loss she has sustained, and has been always held to embrace the injury to the feelings, affections, and wounded pride, as well as the loss of marriage."

In 3 Sutherland, Damages (3d ed.), at § 983, that learned author observes:

"The action for this cause is peculiar. While it is in form upon contract, and in truth based upon it and its breach, the damages are governed by principles which apply to actions for personal torts. The motive of the breach may be inquired into, and may be very material in respect to the amount of damages. The right of action is so personal in its nature that it will not survive to or against personal representatives. Nor are the damages confined to the mere pecuniary loss. Either party may sue for breach by the other, though in the large majority of instances the female is the plaintiff. The recovery may be for injury to her feelings, affections and wounded pride, as well as for the loss of the marriage."

That seduction induced by promise of marriage is a fact provable in enhancement of damages resulting from a breach

of promise of marriage is well settled law; this evidently upon
the theory that the seduction constitutes a part of the wrong
inflicted by the breach or, as some authorities view it, consti-
tutes a part of the breach.   In 3 Sutherland, Damages (3d
ed.), at § 984, we find the following pertinent observations:

"The result of an ordinary breach of promise is the loss of
the alliance and the mortification and pain consequent on the
rejection.   If the defendant, during the subsistence of the
promise, has seduced the plaintiff, this fact may be proved in
aggravation of the damages.   The common-law practice is
substantially uniform in allowing such proof.   The seduction
which is allowed to be proven is brought about in reliance
upon the contract, and is, in itself, in no indirect way, a
breach of its implied conditions.   Such an engagement neces-
sarily brings the parties into very intimate and confidential
relations, and the advantage taken of them by the seducer is
as plain a breach of trust in all its essential features as any
advantage gained by a trustee, guardian or confidential ad-
viser who cheats a confiding ward, beneficiary or client into
a losing bargain.   It differs from ordinary breaches of trust
in being more heinous.   A subsequent refusal to marry the
person whose confidence has thus been abused cannot fail to
be aggravated in fact by the seduction.   The contract is twice
broken; for to the results of an ordinary breach there are
added loss of character and social position, and not only a
deeper shame and sorrow, but a darkened future.   All of
these spring directly and naturally from the broken obliga-
tion.   The contract involves protection and respect as well
as affection, and is violated by the seduction, as it is by the
refusal to marry.   A subsequent marriage condones the first
wrong, but a refusal to marry makes the seduction a very
grievous element of the injury that cannot be lost sight of in
any view of justice."

See, also, *Coil v. Wallace*, 24 N. J. L. 291; *Giese v.
Schultz*, 53 Wis. 462, 10 N. W. 598; *Sheahan v. Barry*,
27 Mich. 217; *Dent v. Pickens*, 34 W. Va. 240, 12 S. E.
698, 26 Am. St. 921; *Hood v. Sudderth*, 111 N. C. 215,
16 S. E. 397; *Lanigan v. Neely*, 4 Cal. App. 760, 89 Pac.
441; *Harrison v. Carlson*, 45 Colo. 55, 101 Pac. 76; 2 Sedg-
wick, Damages (9th ed.), § 639; 15 R. C. L. 968.

We are unable to read appellant's final amended complaint
in the former action and her final amended complaint in this
action and reach any other conclusion than that they plead in
substance the same facts upon which recovery is sought, and
upon which judgment was awarded her, in the former action.
We find alleged in each of these complaints the same promise
of marriage and its acceptance, the same seduction induced
by the promise of marriage, the same continued course of
illicit relations induced by the promise of marriage, and the
same breach of the promise of marriage, each of which facts
is plead in each of the complaints with substantially equal pre-
cision and given substantially equal prominence therein. It
seems plain to us that appellant has, in each of these actions,
pleaded facts so related to each other that her right of re-
covery in each thereof must be considered as resting upon the
same alleged wrong.

We do not overlook the fact that the real question here for
consideration is whether or not the claim of damage made by
appellant for breach of promise of marriage was rendered
*res judicata* against her by the judgment rendered in her
favor in the former action, instead of the converse of the pro-
position. Nor do we overlook the fact that seduction does
not necessarily involve a breach of promise of marriage,
though the latter is probably the most common inducement
put forward to effect seduction. Of course, where seduction
is induced apart from a promise of marriage, a recovery of
damages therefor by the one seduced would not be a bar to re-
covery by her of damages for a breach of such promise. It
may be also conceded that, where damages for seduction are
recovered by a parent or some one entitled thereto other than
the one seduced, such recovery would not be a bar under any
circumstances to her recovery for breach of promise of mar-
riage. But our present problem is not so conditioned. We
have here the identical parties to both actions. We have here
the identical facts in each action, in substance, finally plead by
appellant as a basis for her recovery. It is true she alleged

in the former action that she was damaged because of the
seduction, and in this one that she is damaged because of the
breach of promise of marriage. These allegations, we think,
however, must be regarded as only her conclusions and claims
as to the extent of her damage. Both of these would have
been equally appropriate concluding allegations in her com-
plaint in each of the actions, and would not have changed the
facts upon which her recovery must, in its final analysis, rest.
So far as the question of *res adjudicata* is concerned, we
think it is of no consequence as to whether the plaintiff may,
in her complaint, evidence her intention to proceed upon the
theory of recovering damages for seduction or for breach of
promise of marriage, assuming, of course, that the facts al-
leged are so related as to show but one wrong, as we think
the pleadings in appellant's former action and in this action
do show.

Some contention is made in appellant's behalf, rested upon
allegations appearing in her reply to respondent's affirmative
defense of *res judicata,* which have to do with pleadings, mo-
tions, and orders in the former action preceding the filing of
the final pleadings therein raising the issues upon which that
action was finally tried. The argument seems to be that the
trial court in that action made rulings which in effect limited
appellant's measure of damages therein to those resulting
from seduction alone. It is true we find in those alleged
pleadings, motions, and orders some evidence of interlocutory
rulings by the trial court, holding that appellant should be
therein required to elect between a cause of action arising
from seduction and a cause of action arising from breach of
promise of marriage. These matters, we think, can have no
bearing upon the question here presented. We have seen that
that case finally went to trial upon the issues raised by ap-
pellant's final second amended complaint and respondent's
answer thereto. We are unable to see why we should look be-
yond these final pleadings and the plain simple judgment for
damages rendered as the result of the trial of the issues so

made, to determine what was litigated in that case. Besides, whatever may be said of these rulings of the trial court in that action, they were in no event other than erroneous as against appellant and cannot be corrected in this action.

We conclude that appellant has had her day in court upon all of the issues here presented, and that the judgment rendered in the former action is *res judicata* of all her rights in the premises. A trial of this action upon the issues raised by the final pleadings filed herein would be but a retrial of the issues finally raised by the pleadings and upon which judgment was rendered in the former action.

The judgment is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and FULLERTON, JJ., concur.