[No. 17982.  Department One.  September 12, 1923.]

RUTH AGNES WARNER, *Appellant*, v. ALBERT BENHAM,
*Defendant*, FRANK D. ALLEN, *as Administrator
of the Estate of Albert Benham, Deceased,
Respondent.*[1]

ABATEMENT AND REVIVAL (20)—DEATH OF PARTY—CAUSES WHICH
SURVIVE—ACTIONS ON "CONTRACT"—BREACH OF MARRIAGE PROMISE. An
action for breach of marriage promise abates upon the death of one
of the parties, notwithstanding Rem. Comp. Stat., § 1518, providing
that all actions on contracts may be maintained by or against execu-
tors and administrators when maintainable by or against the de-
cedent, or § 1486, relating to the substitution of parties.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered February 14, 1922,
dismissing an action for breach of promise to marry.
Affirmed.

*Danson, Williams & Danson (R. E. Lowe,* of
counsel), for appellant.

*Allen, Winston & Allen,* for respondent.

BRIDGES, J.—Suit for damages resulting from a
breach of promise of marriage.  The complaint al-
leged the promise of marriage, sexual relations re-
sulting therefrom, the breach of the promise, the
wealth, prominence and social standing of the defend-
ant.  Pending the trial he died, and the only question
before us is whether the cause of action was buried
with him.  The trial court held that it was.

Actions of this character by or against the personal
representatives of deceased persons were not permit-
ted at common law, and have seldom, if ever, been
permitted in this country.  We do not understand that
the appellant seriously disputes these statements, but

[1] Reported in 218 Pac. 260.

she does contend that this doctrine of the common law "is barbarous" and violates the spirit of our institutions and ought not to be followed by the courts, and that, in any event, the rule of the common law has been so changed by statute in this state as that such actions are maintainable.

In breach of promise of marriage suits, the characters of the individuals are at stake, and inasmuch as character is the most valuable possession of a man or woman, living or dead, it is at least a debatable question whether suits of this kind ought, in fairness, to be maintained after the death of one of the parties. The common law rule governing these matters has not heretofore been considered by the courts of this country as being against that spirit of fair play which forms so prominent a part of our institutions. Since the common law is made the law of this state, except where changed by statute, we are of the belief that such actions are not maintainable unless permitted by statute.

The appellant chiefly relies on § 148 of the 1917 Probate Code (§ 1518, Rem. Comp. Stat.) [P. C. § 9886], reading as follows:

"Actions for the recovery of any property or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by and against their respective testators and intestates."

This provision of the new, is copied from the old, probate statute. See Rem. Code, § 1535. It has been a part of our statutes from a very early date. The records of this court show that never before has a suit of this character been maintained here by or against the representatives of deceased persons. It would seem, therefore, to be a fair presumption that the bar of

the state has not heretofore supposed that the statute quoted authorizes the maintenance of such suits. However, the respective attorneys to this appeal have elaborately and learnedly presented the matter, and it must be conceded that it is not without its difficulties. After a thorough review of the authorities, and a painstaking consideration of the statute and its purposes, we have concluded that the expression in the statute that "all actions founded upon contracts" may be maintained by and against executors and administrators has no reference to such a contract as the one contemplated by a promise of marriage.

While, under the law, that agreement is a civil contract, it is also both much more and much less than the usual contract. It is purely personal; it does not affect property; it is not assignable; rights under it may not be inherited; it concerns one's state of mind rather than his estate; we never look upon the relationship as one of contract in the sense that word is generally used. For its breach the measure of damages is entirely different than in cases for the breach of ordinary contract. The damages are not, as usual, limited to the natural consequences of the breach. The character, the chastity and social standing of the plaintiff, the extent of the injury to her personal feelings and pride, the amount of her mental suffering, the age, wealth and social standing and motives of the defendant—all these features may be taken into consideration in fixing the compensation. Promise of marriage may be a contract, but it is one forming its own class and in its essential features greatly differs from all others. Our views on this branch of the case are so well expressed by Mr. Justice Snyder, in *Flint v. Gilpin* 29 W. Va. 740, 3 S. E. 33, that we quote therefrom:

"Marriage is undoubtedly a civil contract, because consent is necessary to its legal validity, but in its nature, attributes and distinguishing features it is *sui generis*. It is declared a civil contract for certain purposes, but it is not thereby made synonymous with the word 'contract' employed in the common law or statutes. It may be entered into by persons during their minority, and cannot when consummated, be dissolved by the parties. It is more than a contract. It requires certain acts of the parties to constitute marriage, independent of and beyond the contract. It partakes more of the character of an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community. The relation of the parties is essentially personal. Neither the rights, duties, nor obligations created by or flowing from it can be transferred, and an action for a breach of promise to marry, in its main features, has very little resemblance to other contracts. In the latter the damages are limited by fixed rules to the pecuniary loss sustained, while in the former the damages are in the discretion of the jury to the same extent that they are in strictly personal actions, such as slander, malicious prosecution, assault and battery and the like; and the recovery may be, and usually is, principally for injured feelings, anxiety of mind, wounded pride and blighted affections. In the one case the motives for the violation or breach are immaterial; while in the other the motives and conduct of the defendant and other extrinsic circumstances may be given in evidence, in mitigation or aggravation, . . . . The controlling consideration in this action is, that it does not relate to property interests, but to injuries to the person; and the compensation or damages for which the recovery is had consists entirely of personal suffering unconnected with the rights of property."

The same view is taken by nearly all of the courts which have discussed this question, and may be found

in most of the cases which we will hereinafter cite. Indeed, this court, in *Rieger v. Abrams,* 98 Wash. 72, 167 Pac. 76, L. R. A. 1918A 362, said:

"While an action to recover damages for breach of promise of marriage, in a technical sense, arises out of the breach of a contract obligation, it is in its essence an attempt to recover for a tortious wrong;"

quoting to the same effect from Sedgwick on Damages and Sutherland on Damages.

The only cases which have arisen in this country where suit of this kind was sought to be maintained by virtue of a statute similar to ours are: *Flint v. Gilpin, supra; Grubb's Adm'r v. Sult,* 32 Grat. (Va.) 203, 34 Am. Rep. 765; *Wade v. Kalbfleisch,* 58 N. Y. 282, 17 Am. Rep. 250.

The statute involved in the last cited case provided that actions on account and "all other actions upon contract may be maintained by and against executors in all cases in which the same might have been maintained by or against their respective testators." It will be observed that there is no material difference between this statute and our own. In that state there was also a statute which provided that "marriage, so far as its validity in law is concerned, shall continue in this state a civil contract, to which the consent of the parties, capable in law of contracting, shall be essential." Regarding this last statute, the court, speaking through the chief justice, said:

"This statute declares it a civil contract, as distinguished from a religious sacrament, and makes the element of consent necessary to its legal validity, but its nature, attributes and distinguishing features it does not interfere with, or attempt to define. It is declared a civil contract for certain purposes, but it is not thereby made synonymous with the word 'contract' employed in the common law or statutes."

The court continues:

"In actions on contract the motives for violation are immaterial. In this action, the motives and conduct of the defendant and other extrinsic circumstances may be given in evidence, in mitigation or aggravation, and punitive damages may be recovered . . . . while in actions on contract they are not allowed. . . . . So the habits, character and conduct of the plaintiff may be shown in defense or mitigation of damages. . . . . In short, looking at the substance of the action, no court would be justified in holding that it is an action upon contract, within the meaning of the statute referred to."

The Virginia court, in the case of *Grubb's Administrator v. Sult, supra,* elaborately and learnedly considered the matter. The statute there involved read as follows: "A personal representative may sue or be sued . . . . on any contract of or with the deceased." It was held that the agreement to marry was not such a contract as that contemplated by the statute. Chief Justice Tilghman said:

"Although a breach of a promise to marry is a violation of contract, it is yet essentially a tort to the person, and comes so fully within the reason and influence of the principal governing actions *ex delicto,* it is impossible to distinguish between them."

In the West Virginia case of *Flint v. Gilpin, supra,* the statute was identical with that of Virginia above quoted, and the court held that it did not authorize the maintenance of a suit of this character against the personal representatives of deceased persons, saying:

"It seems to me, therefore, that neither upon principle nor authority can an action for breach of promise to marry be maintained, under the common law or our statute by or against the personal representative of the deceased promisor, . . . . ."

Although statutory provisions were not considered in the following cases, they discuss the question in harmony with the views we have expressed: 10 R. C. L. 28-42; *Boor v. Lowrey*, 103 Ind. 468, 3 N. E. 151, 53 Am. Rep. 519; *Lattimore v. Simmons*, 13 Serg. & R. (Pa.) 181; *Wynn v. Tallapoosa County Bank*, 168 Ala. 469, 53 South. 228; *Hayden v. Vreeland*, 37 N. J. Law 372; *State ex rel. Baeder v. Blake*, 107 Wash. 294, 181 Pac. 685.

The appellant cites the case of *Forrester v. Southern Pac. Co.*, 36 Nev. 247, 134 Pac. 753, 48 L. R. A. (N. S.) 1, as being in point in her favor. The statute there involved was substantially the same as that here, but the facts of that case clearly distinguish it from this, and tend to show the distinctions which we have been trying to make. There the deceased purchased a railroad ticket, entitling him to transportation from Houston to San Francisco. While en route he was insulted and humiliated by the train officials; his ticket taken from him and he was put off the train. The second section of the syllabus of that case expresses the holding of the court:

"An action for damages for wrongful ejection of a passenger from a railroad train, brought by the person ejected, is within a statute permitting actions founded on contract to be maintained by the executors or administrator of the person injured if he might himself have maintained the action."

This case is not opposed to the view which we have taken in the case at bar, simply because of the difference in the nature of the two actions. One grows out of a contract in substance, the other grows out of a contract in form only. What we have said concerning the last cited case is applicable to the other cases cited by the appellant.

But she contends that, to construe the statute as we have, would be to leave the question where the common law left it and to hold that the legislature had done a useless thing. In the first place, it is not unusual for statutes to be passed which do nothing more than declare the common law; particularly is this true where some doubt exists as to what the common law is. But we think this statute is not necessarily nothing more than a declaration of the common law. It has been pretty generally held by the authorities that, at common law, the principle of most general application in regard to the survival of causes of action was that those in form *ex delicto* did not survive. It is no doubt true that most causes of action based on contract did survive, but there were exceptions. It has been said that the true test is whether the injury on which the cause of action is based affects property rights or persons alone. In the former case, the cause of action survives, while in the latter it abates. It would thus appear that some doubt exists as to what actions founded upon contract survived at common law, and it was doubtless the intention of the legislature to provide that actions growing out of all contracts of ordinary character should survive.

The contract of promise of marriage is of such limited and peculiar nature, and in all its aspects so different from the usual contract, that we cannot think the legislature intended to include it in the expression, "all actions founded on contract" may be maintained against personal representatives.

Appellant also relies on § 116 of the 1917 probate code (Laws of 1917, p. 674), being § 1486, Rem. Comp. Stat. [P. C. § 9837], reading as follows:

"If any action be pending against the testator or intestate at the time of his death, the plaintiff shall with-

in ninety days after the first publication of notice to
creditors, serve on the executor or administrator a
motion to have such executor or administrator, as such,
substituted as defendant in such action, and, upon the
hearing of such motion, such executor or administrator
shall be substituted, unless at or prior to such hearing,
the claim of plaintiff, together with costs, be allowed
by the executor or administrator and the court. After
the substitution of such executor or administrator, the
court shall proceed to hear and determine the action
as in other civil cases.''

This section does not pertain to the survival of
causes of action, nor does it pretend to give a cause of
action where one did not exist at common law. Its sole
purpose was to provide for the substitution of parties
in actions which, by law, survive the death of one of
the parties.

Judgment affirmed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL,
JJ., concur.