PRESENT: All the Justices

JULIA V. McGRATH

v. Record No. 160262

ETHAN L. DOCKENDORF

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
December 15, 2016

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Daniel E. Ortiz, Judge

We resolve in this appeal whether the "heart balm" statute, Code § 8.01-220, bars an action in detinue for recovery of an engagement ring following the breakoff of the engagement. We conclude that the heart balm statute does not bar such an action, and, therefore, we affirm.

BACKGROUND

On August 25, 2012, Ethan L. Dockendorf proposed to Julia V. McGrath. She accepted. He offered her a two-carat engagement ring worth approximately $26,000. In September 2013, after the relationship deteriorated, he broke off the engagement. The parties never married. Love yielded to litigation, and Dockendorf filed an action in detinue seeking, among other things, the return of the ring. In response, McGrath demurred to Dockendorf's complaint, arguing that it was barred by Code § 8.01-220. Following a hearing, the trial court agreed with Dockendorf. The court found that the ring was a conditional gift. It also held that Code § 8.01-220 did not bar the action in detinue for recovery of the ring. The court ordered McGrath to either return the ring within 30 days or it would enter judgment in the amount of $26,000 for Dockendorf. This appeal followed.

ANALYSIS

The issue before us is one of statutory construction, which we review de novo. *Jones v. Williams*, 280 Va. 635, 638, 701 S.E.2d 405, 406 (2010).

Virginia previously recognized suits for breach of a promise to marry. Such suits allowed an aggrieved fiancée to recover damages for improper breach of an engagement. *See Grubb v. Sult*, 73 Va. (32 Gratt.) 203, 207 (1879). Because it was "impossible to fix any rule or measure of damages," the factfinder could "take into consideration all the circumstances of the case, the loss of comfort, the injury to the feelings, affections and wounded pride of the plaintiff." *Id.* at 209. The plaintiff could seek "expectation damages to place [him or] her in the financial and social position [he or] she would have attained had the marriage taken place (very much akin to the rights of a divorced spouse)." Alan Grant & Emily Grant, *The Bride, the Groom, and the Court: A One-Ring Circus*, 35 Cap. U. L. Rev. 743, 745 (2007). The plaintiff could also ask for "traditional tort damages to recover for the emotional anguish and humiliation of the broken engagement." *Id.* Finally, the plaintiff could seek "reliance damages including the lost economic security, opportunity costs of a foregone alternative such as employment, and also the impaired prospects of marrying another due to the [plaintiff's] status now as 'damaged goods.'" *Id.*

"By the late nineteenth century, breach of promise to marry suits were more popular in America than they were in England." *Id.* at 746. Such "trials had become 'social phenomen[a]'--entertainment for the entire town and fodder for sensationalistic tabloid media." *Id.* Over time, such actions were severely "criticized as being anachronistic, contrary to modern notions of justice, and subject to abuse by blackmail." Note: *Heartbalm Statutes and Deceit Actions*, 83 Mich. L. Rev. 1770, 1770 (1985). Breach of promise to marry actions were criticized for excessive verdicts, fueled by "[l]ax evidentiary standards [that] allowed for private and sensational details to be admitted and often skewed the outcome of the case in favor of the plaintiff." Grant & Grant, 35 Cap. U. L. Rev. at 746.

In response, beginning in the 1930's, states began to enact "statutes colloquially called 'heart balm' acts that abolished actions for breach of promise to marry and often abolished the related common law actions for alienation of affections, criminal conversation, and seduction as well." *Heartbalm Statutes and Deceit Actions*, 83 Mich. L. Rev. at 1771. *See also Matthew v. Herman*, 56 V.I. 674, 682-84 (V.I. 2012) (discussing reasons underlying legislative and judicial abrogation of amatory torts of alienation of affection and criminal conversation, as well as cause of action for breach of promise to marry). In 1968,[1] the Virginia General Assembly enacted Code § 8.01-220, which currently provides in subsection (A):

> Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this Commonwealth for alienation of affection, breach of promise to marry, or criminal conversation upon which a cause of action arose or occurred on or after June 28, 1968.

In addition to an action for breach of promise to marry, Virginia law also recognized a separate right to seek the return of an engagement ring when the engagement is broken off. This right of action is rooted in the common law of conditional gifts. We held in *Pretlow v. Pretlow*, 177 Va. 524, 555, 14 S.E.2d 381, 388 (1941), that when a prospective husband makes a present to his intended wife "and the inducement for the gift is the fact of her promise to marry him, if she break off the marriage, he may recover from her the value of such present."

McGrath argues that the text of the statute forecloses Dockendorf's action. She notes that an action to recover an engagement ring is, in effect, an action for breach of promise to marry because without a breached promise to marry there would be no action to recover the ring. Dockendorf responds that the text and purpose of the statute evince a legislative intent to abolish a specific type of common law action not at issue in this case. We agree with Dockendorf.

---

[1] 1968 Acts ch. 716.

3

"The primary objective in statutory construction is to determine and give effect to the intent of the legislature as expressed in the language of the statute." *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012). As a textual matter, Code § 8.01-220(A) bars three specific civil actions: (1) alienation of affection; (2) breach of promise to marry, and (3) criminal conversation.[2] The statute says nothing about the law of conditional gifts. Dockendorf did not file a civil action seeking damages based upon McGrath's breach of a promise to marry. Instead, he filed an action in detinue seeking the recovery of the ring or its monetary value on a theory of conditional gift. *See Pavlicic v. Vogtsberger*, 136 A.2d 127, 131 (Pa. 1957) (in seeking to recover an engagement ring, the plaintiff is "not asking for damages because of a broken heart or a mortified spirit[; rather, h]e is asking for the return of things which he bestowed with an attached condition precedent, a condition which was never met").

Detinue differs from an action for breach of a promise to marry in significant ways. Breach of promise to marry suits were intended to broadly compensate a plaintiff for the loss and humiliation of a broken engagement. *Grubb*, 73 Va. at 209. In contrast, "[t]he object of a detinue action is to recover specific personal property and damages for its detention." *Broad Street Auto Sales, Inc. v. Baxter*, 230 Va. 1, 2, 334 S.E.2d 293, 294 (1985). "The action is employed to recover a chattel from one in possession who unlawfully detains it from either the true owner or one lawfully entitled to its possession." *Id.* To succeed in a detinue action, a plaintiff must establish the following:

> (1) The plaintiff must have property in the thing sought to be recovered; (2) he must have the right to its immediate possession;

---

[2] Originally, the tort of criminal conversation allowed a husband to sue a person who had engaged in sexual relations with his wife. *Zedd v. Jenkins*, 194 Va. 704, 705, 74 S.E.2d 791, 792 (1953). The tort was later extended to permit wives to also file suit. *Newsom v. Fleming*, 165 Va. 89, 95, 181 S.E. 393, 396 (1935).

4

(3) it must be capable of identification; (4) the property must be of some value, and (5) the defendant must have had possession at some time prior to the institution of the action.

*Vicars v. Atlantic Discount Co.*, 205 Va. 934, 938, 140 S.E.2d 667, 670 (1965). Damages are limited. "If the specific property cannot be returned, judgment is rendered for its value." *Broad Street Auto Sales, Inc.*, 230 Va. at 2, 334 S.E.2d at 294. Simply put, due to its limited scope and the limited relief afforded by it, a detinue action rooted in a theory of conditional gift is not and does not resemble an action for breach of a promise to marry.

We note that a majority of other courts have, consistent with our interpretation of Virginia's statute, rejected the argument that their state's heart balm statute foreclosed an action for recovery of a ring or other property. *See In re Marriage of Heinzman*, 596 P.2d 61, 63 (Colo. 1979); *Piccininni v. Hajus*, 429 A.2d 886, 888 (Conn. 1980); *Gill v. Shively*, 320 So. 2d 415, 416-17 (Fla. Dist. Ct. App. 1975); *De Cicco v. Barker*, 159 N.E.2d 534, 535 (Mass. 1959); *Gikas v. Nicholis*, 71 A.2d 785, 786 (N.H. 1950); *Beberman v. Segal*, 69 A.2d 587, 587 (N.J. Super. Ct. Law Div. 1949); *Pavlicic*, 136 A.2d at 131; *Bryan v. Lincoln*, 285 S.E.2d 152, 153-55 (W. Va. 1981). *Albinger v. Harris*, 48 P.3d 711 (Mont. 2002), upon which McGrath relies, does not support her position. The court in that case concluded that Montana's heart balm statute did not foreclose an action for recovery of property exchanged in contemplation of marriage and that such claims "are still determined by existing law and common-law principles." *Id*. at 716.[3] That is the view we take.

---

[3] We acknowledge the existence of a split of authority with respect to whether fault is a relevant consideration in actions to recover an engagement ring. *Compare Fowler v. Perry*, 830 N.E.2d 97, 105-06 (Ind. Ct. App. 2005) (noting split and citing cases) with *Clippard v. Pfefferkorn*, 168 S.W.3d 616, 619-20 (Mo. Ct. App. 2005) (employing a fault based approach). We need not resolve the question in this case, however, because the sole assignment of error before us is whether "the Trial Court erred in failing to apply the Heart Balm Statute to an action for the return of an engagement ring when the wedding never occurs." The question of fault may

5

An additional consideration bolsters the conclusion we draw from the plain language of the statute. The General Assembly is presumed to be aware of the decisions of this Court when enacting legislation. *Dodson v. Potomac Mack Sales & Serv., Inc.*, 241 Va. 89, 94, 400 S.E.2d 178, 180-81 (1991). The *Pretlow* case had been decided several decades prior to the enactment of Code § 8.01-220. Therefore, we presume the General Assembly was aware of this separate avenue for recovery of property or its value. Had the General Assembly wished to bar actions in detinue for the recovery of engagement rings, it would have chosen a vehicle that unequivocally does so.

McGrath cites *Lee v. Spoden*, 290 Va. 235, 248-49, 776 S.E.2d 798, 805 (2015) for the distinction we drew there between a "right of action" and a "cause of action" for purposes of res judicata. She argues that any cause of action that includes in its "nucleus of operative facts" the breach of a promise to marry is barred by Code § 8.01-220(A). We disagree. The text of the heart balm statute does not purport to bar all "causes of action" that have some relation to a failed engagement. Instead, it targets for elimination three discrete torts, including the common law "civil action" for breach of promise to marry. Code § 8.01-220(A) does not, for example, bar a suit for breach of contract from a caterer or a wedding venue that arose in the wake of a breached promise to marry.

McGrath also seeks to analogize the present cause of action to *McDermott v. Reynolds*, 260 Va. 98, 530 S.E.2d 902 (2000). In *McDermott*, the plaintiff relied on a theory of intentional infliction of emotional distress to recover damages stemming from an adulterous relationship the defendant maintained with the plaintiff's wife. We held that Code § 8.01-220 barred this action. We reasoned that "when the General Assembly enacted Code § 8.01-220, it manifested its intent

---

(or may not) bear upon the viability of a detinue action, but it is not relevant to our construction of the heart balm statute.

6

to abolish common law actions seeking damages for a particular type of conduct, regardless of the name that a plaintiff assigns to that conduct." *Id.* at 101, 530 S.E.2d at 903. Because the plaintiff's complaint was based on conduct that would have supported a civil action for alienation of affection, Code § 8.01-220 barred the suit. Our stated objective was to "effectuate [legislative] intent and foreclose a revival of the abolished tort of alienation of affection asserted in the guise of an action for intentional infliction of emotional distress." *Id.* at 103, 530 S.E.2d at 904. Unlike the plaintiff in *McDermott*, Dockendorf is not trying to pour old wine into new wineskins. Dockendorf simply seeks to recover property given as a conditional gift when the condition that formed the basis for the gift did not occur.

Finally, McGrath argues that "if the condition to a gift (or a contract) is illegal, the condition fails as a matter of law." She maintains that because the General Assembly has prohibited a cause of action for breach of a promise to marry, the basis for the condition of the gift is void as against public policy. We find this argument unpersuasive. For one thing, it appears to rest on the same mistaken premise about the scope of the heart balm statute. For another, there is a difference between a *promise to marry*, which, even though it is unenforceable, is hardly illegal or against public policy, and *an action for recovery of damages* for breach of a promise to marry, which is barred by Code § 8.01-220. The gift of the ring was not conditioned on the ability to maintain an action for breach of promise to marry. That would have been impermissible. Instead, the gift of the ring, under settled Virginia law, was a conditional gift. *See Pretlow*, 177 Va. at 555, 14 S.E.2d at 388. When the condition upon which the gift was made did not occur, Dockendorf could institute an action in detinue to recover the ring or its value.

7

CONCLUSION

The heart balm statute, Code § 8.01-220, does not bar a detinue action to recover conditional gifts, such as an engagement ring, that were given in contemplation of marriage. The trial court found as fact that the ring was given as a conditional gift in contemplation of marriage. The marriage did not occur. Consequently, we will affirm the judgment of the trial court.

*Affirmed.*