PRESENT:  All the Justices

MARTHA A. LAMBERT

v.  Record No. 160269

SEA OATS CONDOMINIUM ASSOCIATION, INC.

OPINION BY
JUSTICE WILLIAM C. MIMS
April 13, 2017

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

In this appeal, we consider whether the circuit court abused its discretion by limiting the

amount of an award of attorney's fees based on the amount of damages recovered by the

prevailing plaintiff.  We also consider the stage of a proceeding at which a prevailing party who

seeks an award of attorney's fees must meet its burden of proving that the amount sought is

reasonable.

I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Martha A. Lambert owns a unit in the Sea Oats Condominium.  In January 2014, she

filed a warrant in debt in the general district court asserting that the Sea Oats Condominium

Association, Inc. ("the Association") failed to pay $500 to repair an exterior door to her

condominium.  She alleged that the door was a common element and that the Association bore

the burden of repairing it under the Association's declaration, its bylaws, and Code §§ 55-79.41

and 55-79.79(A).  She sought, among other things, $500 in damages and an award of attorney's

fees. The general district court thereafter entered judgment for the Association.

Lambert appealed to the circuit court.  In her bill of particulars there she again sought

$500 in damages and an award of attorney's fees.  At trial, Lambert testified and called an

additional witness.  She then rested.  The Association then called two witnesses and rested.

Lambert declined to present rebuttal evidence.

At the conclusion of her closing argument, Lambert reminded the court that she was seeking an award of attorney's fees and supplied an affidavit stating that $8232.00 had been incurred. She noted that the Association had not had an opportunity to review the affidavit and requested a later hearing under Rule 3:25 to determine the reasonableness of the amount she sought. The Association then made its closing argument. It did not object to Lambert's request for an award of attorney's fees. It did not object to the affidavit when Lambert supplied it or when the court said it would mark the affidavit as filed.

The court awarded judgment to Lambert for $500. It asked the Association how much time it needed to review Lambert's attorney's fees affidavit and expressed its preference that the parties respond in writing rather than holding a hearing. The Association asked for three weeks to respond and Lambert asked for one week thereafter to reply. The court adopted these dates as deadlines.

In the Association's written response, it argued that under *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998), Lambert was required to prove the reasonableness of her attorney's fees request during her prima facie case. Unlike the customary process in jury trials, it argued, Lambert did not seek to bifurcate the case by segregating the issue of attorney's fees from the merits of the underlying action. She adduced no evidence of her attorney's fees until she supplied the affidavit in her closing argument, after she had rested her case. This was after her prima facie case, the Association reasoned, so the circuit court could not award any attorney's fees.

The Association also argued that the amount of attorney's fees Lambert sought was not reasonable for two reasons. First, it contended that the amount of attorney's fees in the affidavit was 16 times the amount of the judgment. It noted that in *West Square, L.L.C. v. Communication Technologies*, 274 Va. 425, 432-35, 649 S.E.2d 698, 701-03 (2007), this Court

affirmed a circuit court's ruling that reduced an award of attorney's fees from the $80,000 sought to $10,000 when the prevailing party obtained an award of damages of $35,000. The court's ruling thus reduced an award of attorney's fees from more than twice the amount of damages awarded to less than a third. Second, it asserted that the amount of attorney's fees in the affidavit was not reasonable because it included (1) work that should have been performed by staff, rather than an attorney; (2) work duplicated when Lambert chose to change counsel during the course of the proceeding; and (3) work likely completed when counsel represented Lambert in an earlier lawsuit.

The court thereafter issued an opinion letter, without waiting for Lambert's reply to the Association's response, awarding Lambert only $375 in attorney's fees and asking her to prepare and circulate a final order. Lambert nevertheless filed a reply to the Association asserting that (1) attorney's fees are often decided after a ruling on the merits, (2) nothing requires the presentation of evidence of attorney's fees before the merits have been decided, and (3) in any event, the Association had agreed to the procedure for deciding attorney's fees that the court had proposed at trial.

Citing *Couch v. Manassas Autocars, Inc.*, 77 Va. Cir. 30 (Prince William Cnty. Cir. Ct. 2008) and *Maximus, Inc. v. Lockheed Information Management Systems Co.*, 47 Va. Cir. 193, 204-05 (Richmond City Cir. Ct. 1998), Lambert also argued that circuit courts have ruled that there is no relationship between the amount of damages awarded and the reasonableness of the amount of attorney's fees incurred to obtain the award. Further, she noted that this Court ruled in *Wilkins v. Peninsula Motor Cars, Inc.*, 266 Va. 558, 563, 587 S.E.2d 581, 584 (2003), that by authorizing an award of attorney's fees in a statute the General Assembly evidenced its intent to encourage private parties to enforce the statute through civil litigation. She asserted that Code § 55-79.53 is such a statute. Using the amount of damages awarded as a factor to determine the

3

reasonableness of the amount of attorney's fees incurred, she continued, would undermine this legislative intent because private parties would not undertake private enforcement litigation where the money damages were small if they had to pay attorney's fees out of pocket. The statutes the General Assembly intended private parties to enforce would then have no effect.

Thus, Lambert concluded, the court was required under the statute to award her reasonable attorney's fees because she prevailed on the claim in her warrant in debt. However, she conceded that some of the entries in the affidavit reflected work duplicated when she changed counsel. She therefore reduced her attorney's fees request from $8232.00 to $6918.50. However, she sought an additional $2650 for work incurred after the affidavit was provided to the court at trial, for a total of $9568.50.

The court responded with a letter stating that it had reviewed Lambert's reply and was renewing its award of only $375 in attorney's fees. Lambert filed a motion to reconsider, again asserting that the amount of damages awarded is not a proper factor for the court to consider when evaluating the reasonableness of the amount of attorney's fees to award. The court held a hearing on the motion, at which it ruled that

> I felt compelled to impose a relationship between the amount in controversy and the level to which I was going to require the defendant to pay your fees. And rightly or wrongly, I thought $6,000 in attorney's fees on a case involving a dispute of $500 was not fair to the defendant. I didn't feel you were being the least bit unreasonable in any respect. You did a magnificent job for this young lady, but I just didn't think it was right to impose that kind of attorney's fees in a case where the amount in controversy was $500, and it was a close call. . . . It was a close call for you to win at all. And so I well understand, and I well appreciate your unhappiness with my setting the attorney's fees at what I did, but I'm going to stand by it and deny your motion. . . . Not for one instant because you didn't do a great job, because you did, but I just didn't think it was the right thing to do.

Lambert thereafter prepared a final order consistent with the court's ruling. However, the court rejected the objections she included on the final order. It held another hearing at which

4

Lambert entered her objections on the record orally. The Association also renewed its objections that Lambert was not entitled to any award at all because she had presented no evidence relating to attorney's fees in her prima facie case, and that the amount of attorney's fees Lambert sought was not reasonable. The court thereafter entered a corrected final order awarding Lambert $500 in damages and $375 in attorney's fees.

We awarded Lambert this appeal and awarded the Association an assignment of cross-error.

## II. ANALYSIS

### A. THE RELATIONSHIP BETWEEN DAMAGES AND THE REASONABLENESS OF AN AWARD OF ATTORNEY'S FEES

In her sole assignment of error, Lambert asserts that the circuit court erred by awarding her only $375 in attorney's fees. She again argues that under *Wilkins*, Code § 55-79.53(A) makes an award of reasonable attorney's fees mandatory to encourage private citizens to enforce the statute through civil litigation. She notes that the circuit court did not criticize her counsel or find that the amount of attorney's fees she sought was unreasonable for the work he performed; to the contrary, the court repeatedly praised counsel's representation. Rather, the sole basis for denying the amount of attorney's fees Lambert sought was the court's view that the amount was unreasonable when only $500 was awarded in damages. She argues that there is no legal basis for limiting the amount of attorney's fees based on the amount of damages awarded and again notes that circuit courts have ruled to the contrary. She also cites *Mozley v. Prestwould Board of Directors*, 264 Va. 549, 570 S.E.2d 817 (2002), noting that in that case we affirmed an award of $15,855.08 in attorney's fees to a condominium association when it was the prevailing party. Lambert observes that she is seeking an award of attorney's fees roughly half that amount.

The Association responds that the reasonable amount of attorney's fees to be awarded is solely within the trial court's discretion. It argues that our rulings in *West Square* and *Holmes v. LG Marion Corp.*, 258 Va. 473, 479, 521 S.E.2d 528, 533 (1999), suggest that courts may consider the amount of damages recovered. It also contends that we have never expressly excluded the amount of damages recovered as a factor lower courts may consider when evaluating the reasonableness of the amount of an attorney's fees award.

1. Standard of Review

We review an award of attorney's fees for abuse of discretion. *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 429, 732 S.E.2d 690, 702 (2012); *Coady v. Strategic Resources, Inc.*, 258 Va. 12, 18, 515 S.E.2d 273, 276 (1999).[1] The three principal ways a court abuses its discretion are "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Manchester Oaks*, 284 Va. at 429, 732 S.E.2d at 702-03 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

---

[1] We note that in some cases, the reasonable amount of attorney's fees may be decided by a jury. *Lee v. Mulford*, 269 Va. 562, 567, 611 S.E.2d 349, 352 (2005); *but see REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213-14, 776 S.E.2d 808, 813-14 (2015) (concluding that by expressly authorizing only the "court" to award reasonable attorney's fees in Code § 38.2-209(A), the General Assembly intended to exclude a jury). Many decisions are committed to the sound discretion of a jury, including awards for punitive damages, *Coalson v. Canchola*, 287 Va. 242, 249, 754 S.E.2d 525, 528 (2014), and for physical pain, suffering, and mental anguish, *Certified T.V. & Appliance Co. v. Harrington*, 201 Va. 109, 114, 109 S.E.2d 126, 130 (1959). Such decisions generally "will not be disturbed unless it appears that [they were] influenced by partiality, prejudice, corruption of the jury, or by some mistaken view of the evidence." *Id.* at 114, 109 S.E 2d at 130. However, we do not address the standard of review applicable to a jury's decision on attorney's fees today because there was none in this case.

6

Lambert argues that because she sought an award of attorney's fees under Code § 55-79.53(A), this appeal presents a question of statutory interpretation and that the standard of review should be de novo. However, she misapprehends the role of the statute in the analysis.

It is true that a statute may "circumscribe[] the range of choice available to a court in the exercise of its discretion." *Lawlor v. Commonwealth*, 285 Va. 187, 213, 738 S.E.2d 847, 861 (2013). Thus, "the abuse-of-discretion standard includes review to determine that the [exercise of] discretion was not guided by erroneous legal conclusions, because a court also abuses its discretion if it inaccurately ascertains [the] outermost limits" of the range of choice available to it. *Id.* (internal citation, alteration, and quotation marks omitted). But the boundary of the range of choice available to the court is itself a relevant factor for the court to consider when exercising its discretion. *Id.* at 213, 738 S.E.2d at 862. This is true whether the boundary is fixed by precedent or statute.[2]

## 2. "Reasonable" attorney's fees

Code § 55-79.53(A) provides in relevant part that "the prevailing party [in an action to enforce compliance with condominium instruments] *shall be entitled* to recover reasonable attorney fees." (Emphasis added). This language has two effects. First, it creates an exception

---

[2] For example, we review a ruling to admit expert opinion testimony for abuse of discretion. *Hyundai Motor Co. v. Duncan*, 289 Va. 147, 155, 766 S.E.2d 893, 897 (2015). However, Code § 8.01-401.2(B) prohibits a trial court from admitting the testimony of a physician's assistant to establish a doctor of medicine's standard of care in a malpractice action. The statute's absolute bar to such testimony in such cases is a relevant factor to be given significant weight as a trial court exercises its discretion when deciding whether to admit the testimony. The fact that a statute creates one of the factors the court must consider—in this example, a factor establishing the boundary of the court's range of choice—does not convert the abuse-of-discretion standard of review into a de novo standard. *Lawlor*, 285 Va. at 214, 738 S.E.2d at 862. Rather, the court abuses its discretion if it admits the prohibited testimony either because it failed to consider the statute (which is a relevant factor entitled to significant weight), or because the court considered the statute but admitted the testimony anyway (which is a clear error of judgment in weighing the factors).

7

to the general rule that each litigant pays his or her own attorney's fees. *See*, *e.g.*, *Chacey v. Garvey*, 291 Va. 1, 8, 781 S.E.2d 357, 360 (2015). Second, it makes an award of reasonable attorney's fees to the prevailing party mandatory, in contrast to other statutes making such an award discretionary. *Cf.*, *e.g.*, Code § 64.2-795 (providing that a court "*may* award costs and expenses, including reasonable attorney's fees" (emphasis added)). But Code § 55-79.53(A) does not purport to legislatively alter or supersede our precedents advising courts how to decide whether an amount of attorney's fees is reasonable. We presume that when the General Assembly enacts legislation, it is aware of this Court's precedents. *McGrath v. Dockendorf*, 292 Va. 834, 840, 793 S.E.2d 336, 339 (2016). Consequently, we presume that the General Assembly intended courts to be guided by those precedents in Code § 55-79.53(A) cases.

We have expressly identified seven factors for courts to consider when weighing the reasonableness of an amount of attorney's fees: "[(1)] the time and effort expended by the attorney, [(2)] the nature of the services rendered, [(3)] the complexity of the services, [(4)] the value of the services to the client, [(5)] the results obtained, [(6)] whether the fees incurred were consistent with those generally charged for similar services, and [(7)] whether the services were necessary and appropriate." *Manchester Oaks*, 284 Va. at 430, 732 S.E.2d at 703 (quoting *Chawla*, 255 Va. at 623, 499 S.E.2d at 833 (internal quotation marks omitted)). These seven factors are not exhaustive. *Id.* The question in this case is whether courts may also consider the amount of damages the plaintiff recovered or sought to recover. We conclude that they may do so within the scope of the "results obtained" factor.

The "results obtained" factor made its first appearance in the context of determining the reasonableness of an amount of attorney's fees in *Chawla*. *Id.* For the most part, the list of factors compiled in that case was a consolidation of factors we had considered a year earlier in *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. Partnership*, 253 Va. 93,

480 S.E.2d 471 (1997).[3] *Chawla*, 255 Va. at 623, 499 S.E.2d at 833 (citing *Seyfarth, Shaw*, 253 Va. at 97, 480 S.E.2d at 473). However, the "results obtained" factor was not one we considered in *Seyfarth, Shaw*. 253 Va. at 97, 480 S.E.2d at 473. Nevertheless, it is a concept familiar to courts in a similar context: fixing the compensation for fiduciaries, which by statute also must be "reasonable." *See* Code § 64.2-1208(A).

In one of the earliest cases to consider the question of reasonableness of fiduciaries' compensation, we said that "[t]he value of the estate, the character of the work, the difficulties encountered, and the results obtained must all be remembered in reaching a judgment." *Trotman v. Trotman*, 148 Va. 860, 868, 139 S.E. 490, 492 (1927) (construing former Code § 5425 (1919), now codified as amended at Code § 64.2-1208). Later, in *Swank v. Reherd*, 181 Va. 943, 945-46, 27 S.E.2d 191, 192 (1943), we considered a case where an attorney was appointed co-executor of an estate. In his dual capacity as co-executor and attorney, he defended the estate against claims totaling $38,022.43. Through his efforts, the plaintiffs recovered only $12,929.57. *Id.* After reciting the reasonableness factors from *Trotman*, we assessed each one of them in turn. In evaluating "the results obtained" factor, we noted that the plaintiffs' claims "were resisted successfully to the end that" the attorney co-executor's legal services saved the estate more than $25,000.00. *Id.* at 950-51, 27 S.E.2d at 194-95.

---

[3] While *Seyfarth, Shaw* was a case where a law firm sought to recover its fees from a client that refused to pay its bill, not a case about awarding attorney's fees to a prevailing party, 253 Va. at 94-95, 480 S.E.2d at 471-72, the question in both types of cases is whether the amount sought is reasonable. *Compare id.* at 96, 480 S.E.2d at 473 (holding that "[a]n attorney who seeks to recover legal fees from a present or former client must establish . . . that the fees charged to the client are reasonable") *with RF&P Corp. v. Little*, 247 Va. 309, 322, 440 S.E.2d 908, 917 (1994) (noting that "in all cases where attorney's fees are recoverable pursuant to statute," the fees sought must be reasonable) *and Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1994) (holding that where a contract "provided for attorney's fees, but did not fix the amount," the fees sought must also be reasonable). Thus, the same factors are relevant in both types of cases.

Thus, we have considered the amount of damages awarded as a component of "the results obtained" factor before, albeit in the context of reasonable fiduciary compensation. We see no good reason why courts should not consider it in the context of reasonable attorney's fees as well.[4] We hasten to note, however, that merely applying a ratio between the damages actually awarded and damages originally sought will not satisfy the reasonableness inquiry. In *Swank*, we compared the amount of damages awarded to the amount of damages sought solely to measure the effectiveness of the attorney's representation of the estate. We did not calculate his reasonable compensation by dividing the plaintiffs' judgment by their ad damnum to arrive at a percentage.[5]

The comparison of the damages awarded to the damages sought serves a valuable purpose by ensuring that the damages sought by a plaintiff in any particular case are reasonably related to the cause of action. If a plaintiff seeks a $500,000 recovery but is awarded only $50,000 in damages, the disparity could be reflected in any subsequent award of attorney's fees. While it is true that our case law encourages plaintiffs to plead their damages liberally—because they cannot be awarded more damages than they claim in their ad damnum, *e.g.*, *Lee v. Spoden*, 290 Va. 235, 253, 776 S.E.2d 798, 807-08 (2015)—an unreasonably exaggerated claim for damages provokes a proportional response by the defendant. This unnecessarily inflates the costs of litigation for both sides and increases the possibility that one will end up liable to the other for an exorbitant award of attorney's fees.

---

[4] Damages are of course irrelevant in cases in which none are sought, such as those for specific performance or injunctive relief. These cases tend to be binary, and "the result obtained" is clear based on whether the relief sought was granted or denied.

[5] We also emphasize that a comparison of damages recovered to damages sought is not relevant when determining the threshold question of which party is the prevailing party on a claim. The "'prevailing party' is the 'party in whose favor a judgment is rendered, regardless of the amount of damages.'" *West Square*, 274 Va. at 433, 649 S.E.2d at 702 (quoting *Sheets v. Castle*, 263 Va. 407, 413, 559 S.E.2d 616, 620 (2002)).

10

Thus, the purpose of comparing the damages awarded to the damages sought is to ensure that the ad damnum is reasonable in relation to the cause of action, thereby defusing the litigation arms race that unreasonably high claims for damages may provoke, rather than to handicap plaintiffs in pursuing a full recovery. We are not establishing a rule that in every case where a plaintiff recovers less than all of the damages sought, he or she may not recover all of the attorney's fees reasonably incurred in the case. In holding that the "results obtained" factor permits courts to compare the damages awarded to the damages sought, we merely acknowledge that they may consider the effectiveness of the attorney's representation in achieving the client's goals.[6]

However, the "results obtained" factor does not permit courts to do what the circuit court did here—i.e., to use the amount of damages sought as a limit beyond which no attorney's fees will be awarded. To do so tells parties that they may not recover the reasonable attorney's fees they incur simply by sending an attorney through the courthouse door if they prosecute, or defend against, claims in which such fees exceed the amount in controversy. Circuit court litigation comes at a price, sometimes a heavy price. There is an initial pleading, or an answer to one, to research, write, and file. Discovery may be propounded and must be answered. There will be witnesses to prepare for trial. There may be pre-trial motions to research, write, and argue. And then there is the trial itself, if the case makes it that far. If either party invokes its right to a jury, trial could encompass everything from voir dire to jury instructions.

Each of these tasks requires an attorney's time and, provided the time is reasonable in light of his or her experience and the nature of the case, he or she may expect compensation for

---

[6] Although it is not at issue in this case, we note that the prevailing party may be awarded only those reasonable attorney's fees incurred on the claims on which it actually prevailed. *Ulloa v. QSP, Inc.*, 271 Va. 72, 83, 624 S.E.2d 43, 50 (2006).

that time at a reasonable rate. Undoubtedly, the number of tasks and the time required for them will vary depending on whether the ad damnum is $500 or $5 million, regardless of whether the attorney represents the plaintiff or the defendant. They will likewise vary based on the vigor with which the opposing party responds. But it is the court's duty to assess the necessity of those tasks, the time spent on them, and the rate charged "under the facts and circumstances of the particular case." *Mullins*, 241 Va. at 449, 403 S.E.2d at 335. This does not require the court to pore over pages and pages of billing records to evaluate the reasonableness of each line-item.[7] But the court may neither shirk its duty to assess what amount of attorney's fees is reasonable in the specific case before it, nor award an amount so low that it fails to reimburse the prevailing party for the costs necessary to effectively litigate the claim that—after all—*it prevailed on*.

Plaintiffs who come to court believe they have legitimate claims that are being illegitimately denied by the defendant. Defendants who come to court believe their defenses are legitimate. Neither's position need be frivolous; they may simply disagree. But when each of them comes to court seeking a neutral adjudication of their disagreement, each is there because the opposing side forced him or her to be. When the case is covered by a fee-shifting provision and the court weighs the reasonable amount of attorney's fees to award, it cannot dismiss out of hand the costs of litigation inflicted on the prevailing party by the losing party's insistence on its losing argument, based solely on the dollar value of the claim. To do so deprives the parties of

---

[7] The burden remains on the party seeking an award of attorney's fees to establish that the amount sought is reasonable. *Chawla*, 255 Va. at 623, 499 S.E.2d 833. This may require supplying an expert who has undertaken a detailed evaluation of its attorney's billing records to testify about what amount is reasonable, because without such testimony the court may remain unpersuaded. *Compare Mullins*, 241 Va. at 449, 403 S.E.2d at 335 (noting that "*[o]rdinarily*, expert testimony will be required to assist" in determining whether the amount sought is reasonable (emphasis added)) *with Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94, 112, 413 S.E.2d 611, 621 (1992) (opining that "such testimony is not required in *every* case" (emphasis added)). The likelihood that such testimony is necessary will often be proportional to the complexity of the case.

the benefit of their bargain if the fee-shifting provision is contractual and contravenes the intent of the General Assembly if the provision is statutory.

We stress that this holding does not mean that courts may not consider the value of the claim, along with other factors, to assess the complexity of the case (and therefore the legal services necessary to represent the client's interests), or whether those services were necessary and appropriate in light of the claims prosecuted or defended against. It means only that courts may not do what this court did and say that "$6,000 in attorney's fees on a case involving a dispute of $500" is unreasonable per se, without regard to the necessary costs of effectively litigating a claim.

This holding is consistent with our decision in *West Square*. While the circuit court in that case did reduce the amount of attorney's fees awarded from the $80,000 sought to $10,000, 274 Va. at 432, 649 S.E.2d at 701-02, it did not do so simply because only $35,000 was awarded in damages. To the contrary, West Square had nonsuited two of its three claims on the second day of trial. *Id.* at 429, 649 S.E.2d at 700. The opposing party noted that West Square had not clearly identified which attorney's fees were associated with the nonsuited claims, although much of the pre-trial work was related to them. *Id.* at 431, 649 S.E.2d at 701.

When we reviewed the circuit court's judgment on appeal, we noted that the court had considered the amount of damages awarded but that it had also considered all of the *Chawla* factors as well as the number of claims on which West Square had actually prevailed. *Id.* at 434-35, 649 S.E.2d at 702-03 (citing *Chawla*, 255 Va. at 623, 499 S.E.2d at 833, and *Ulloa v. QSP, Inc.*, 271 Va. 72, 82, 624 S.E.2d 43, 49). The court therefore had not reduced the amount of attorney's fees based solely on the amount of damages awarded.[8]

---

[8] In *Holmes*, the prevailing party argued that the circuit court had capped its award of attorney's fees by the amount of damages awarded but we rejected that argument, in part because

13

Accordingly, the circuit court abused its discretion in this case by failing to consider relevant factors that should have been given significant weight. *Manchester Oaks*, 284 Va. at 429, 732 S.E.2d at 702-03. We therefore will reverse this part of its judgment and remand for further proceedings consistent with this opinion, including an award of the costs and amount of reasonable attorney's fees incurred at trial and in this appeal.

### B. WHETHER A PARTY SEEKING AN AWARD OF ATTORNEY'S FEES MUST PROVE THE REASONABLENESS OF THE AWARD IN ITS PRIMA FACIE CASE

Turning to the Association's assignment of cross-error, it asserts that the circuit court erred by awarding Lambert attorney's fees at all. It again argues that she did not adduce any evidence that the attorney's fees she sought were reasonable in her prima facie case.[9] It also argues that Lambert did not give it any notice of the amount of attorney's fees she sought because she only indicated that she would seek an award, without specifying any specific amount in her pleadings or responses to pre-trial discovery.

The Association's argument is principally based on our statement in *Chawla* that "an attorney who seeks to recover legal fees . . . must establish, as an element of the attorney's prima

---

there was no evidence in the record that it had done so. 258 Va. at 479, 521 S.E.2d at 532. That obviously distinguishes *Holmes* from this case.

[9] During an exchange at oral argument on appeal, the Association suggested that there was no evidence of attorney's fees at all, because the affidavit was not admitted into evidence. However, it did not object to the affidavit on this ground (or any other), either when Lambert supplied the affidavit, when the circuit court stated that it would mark the affidavit as filed, or at any other time during trial.

Although the Association should have raised this issue then, while the court had the opportunity to cure the defect, *Manchester Oaks*, 284 Va. at 429 n.12, 732 S.E.2d at 702 n.12 (citing Rule 5:25), it did not even include the argument in its written response to the affidavit. Rather, the Association argued then only that the "affidavit could not be taken as evidence by the Court because [Lambert] had already rested [her] case," not that the affidavit had not been properly admitted. The Association therefore failed to preserve the issue for appeal. *Richardson v. Richardson*, 242 Va. 242, 247 n.3, 409 S.E.2d 148, 151 n.3 (1991) (applying Rule 5:25 to find cross-error not preserved); *Langley v. Meredith*, 237 Va. 55, 61-62, 376 S.E.2d 519, 522-23 (1989) (same).

14

facie case, that the fees charged . . . are reasonable." 255 Va. at 623, 499 S.E.2d at 833 (quoting

*Seyfarth, Shaw*, 253 Va. at 96, 480 S.E.2d at 473 (1997)). However, the issue in *Chawla* was

whether the prevailing party bore the burden of proving the attorney's fees requested were

reasonable, or whether the opposing party bore the burden of proving them unreasonable; the

issue was not the stage of the proceedings at which the responsible party is required to adduce

evidence to meet its burden. *Id.* at 621, 623, 499 S.E.2d at 832, 833.

Further, *Seyfarth, Shaw*, the case on which we relied in *Chawla* to allocate the burden of

proof, was not a case about awarding attorney's fees to a prevailing party. Rather, as noted

above, it was a case where a law firm sought to recover its fees from a client that refused to pay

its bill. 253 Va. at 94-95, 480 S.E.2d at 471. This is why we referred to "an *attorney* who seeks

to recover legal fees" and "the *attorney's* prima facie case." *Id*. at 96, 480 S.E.2d at 473

(emphases added). As an action sounding in breach of contract, the burden was necessarily on

the attorney, as the plaintiff, to prove his or her damages in his or her case-in-chief as an element

of the cause of action. *E.g. Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

That is not true where a *party* seeks attorney's fees as the prevailing party in an underlying

action. To the contrary, it is often appropriate to delay the issue of awarding attorney's fees until

the disposition on the merits reveals which party has actually prevailed, and on which claims.

That is why Rule 3:25(D) allows a trial court to establish a procedure before trial for deciding

attorney's fees in cases where they may be awarded.[10]

We also reject the Association's argument that a party seeking an award of attorney's

fees must provide advance notice of the amount it will seek.[11] Countless variables, including

_____

[10] Although the circuit court in this case did not establish an attorney's fees procedure until after trial, no party challenges this departure from the Rule.

[11] It is undisputed that Lambert asserted in her complaint and in her discovery responses that she was seeking attorney's fees, but she did not state a specific sum being sought.

defenses, motions, and objections that may be interposed by the opposing party, make it impossible for a party to know how much it will incur in attorney's fees at the pleading or discovery stages, let alone how much of the attorney's fees actually incurred will be considered reasonable by the trial court when it considers the amount of an award. We therefore could not, and do not, require a party seeking an award of reasonable attorney's fees to estimate the amount of such an award prior to the disposition on the merits. The party who may be entitled to an award of attorney's fees is merely required to notify the opposing party that it will seek them if it prevails, as required by Rule 3:25(B).

## III. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the circuit court in part, reverse it in part, and remand the case for further proceedings in light of this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*