PRESENT:  All the Justices

BRIAN ALLEN LEONARD

v.  Record No. 170965

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE WILLIAM C. MIMS
December 13, 2018

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Allan Sharrett, III, Judge

In this appeal, we consider whether the circuit court abused its discretion in denying an application for a name change filed under Code § 8.01-217.

## I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Brian Allen Leonard filed an application in the Circuit Court of Prince George County to change her[*] name to Bree Anna Leonard.  Leonard, an inmate at Federal Corrections Complex Petersburg, has been diagnosed with gender dysphoria and is transitioning from a male to female identity.  Medical records from the Federal Bureau of Prisons detail her diagnosis and treatments through the time of filing.

In a letter attached to her application, Leonard averred that she has taken "gender confirming hormones" for two years and "fully present[s] as female."  She stated that she intended "to further [her] transition by getting Gender Reassignment Surgery (GRS) and one of the requirements set forth by the World Professional Association for Transgender Health . . . is living 12 months in a gender role that is congruent with one's gender identity before being considered for GRS."  As such, "legally changing [her] name is a requirement for . . . taking the next step in [her] transition."  Moreover, she asserted that a name change "will have tremendous psychological benefits" for her because, as a person suffering from gender dysphoria, "being

---

[*] Leonard refers to herself using the feminine pronoun, a usage we adopt here.

called by [her] birth name is harmful and distressing." She further stated that receiving a name change would not interfere with her incarceration or any other conditions of her sentences.

Leonard is presently serving a federal sentence of seventeen years and six months for possession of child pornography. Her incarceration in a federal facility located in Virginia is her only tie to the Commonwealth. Leonard will be in the Commonwealth for less than three years. Upon completing her federal sentence in 2020, she will be transferred to a Missouri state correctional facility to finish serving sentences for three Missouri convictions of statutory sodomy.

Upon receipt of the application, the circuit court appears to have delivered a copy to the Prince George County Commonwealth's Attorney's office. The Commonwealth thereafter filed a response opposing Leonard's application. In it, the Commonwealth argued that Missouri had a greater interest than Virginia in considering the name change and that granting the requested change would frustrate the legitimate law-enforcement purposes of identifying and tracking Leonard during her transition to Missouri and after her release, as well as ensuring her registration as a sex offender.

The circuit court denied Leonard's application by preprinted form order four days after receiving the Commonwealth's response. It did not schedule a hearing, but ruled based solely on the application, its attachments, and the Commonwealth's response. The circuit court marked the boxes on the form order indicating that Leonard is incarcerated, is a person required to register as a sex offender, and that "good cause does not exist for consideration of the application. Therefore, the application for change of name is denied and this cause is dismissed." Left blank were the sections for ordering the clerk to deliver a copy of the order and

application to the Commonwealth's Attorney and for setting a hearing. Leonard noted an appeal from the denial of her application, which we awarded.

## II. ANALYSIS

Although we review a court's denial of an application for a name change for abuse of discretion, *Jordan v. Commonwealth*, 295 Va. 70, 74 (2018), determining the procedures mandated by the Code of Virginia that a court must follow in considering a name-change application is a question of statutory interpretation subject to de novo review, *Boasso Am. Corp. v. Zoning Adm'r of Chesapeake*, 293 Va. 203, 206 (2017). "In construing a statute, '[o]ur central focus is to ascertain and give effect to the intention of the General Assembly,'" determining that intent from the words used in the statute. *Id.* at 207 (quoting *Miller v. Highland Cty.*, 274 Va. 355, 364 (2007)). We "presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016).

Code § 8.01-217 governs applications for name changes. For most citizens, the statute speaks in fairly permissive terms, stating that "the court, shall . . . order a change of name" unless the evidence reveals that name change "is sought for a fraudulent purpose or would otherwise infringe upon the rights of others" or is not in the best interests of a minor, if a minor is the subject of the application. Code § 8.01-217(C); *see Jordan*, 295 Va. at 74. Inmates seeking name changes, however, must satisfy a greater burden than ordinary citizens.

In 2014, the General Assembly passed amendments to Code § 8.01-217 creating a presumption against name changes for probationers, persons required to register on the Sex Offender and Crimes Against Minors Registry, and inmates. The statute sets forth a strict procedure for courts considering applications from those individuals. *See* Code § 8.01-217(D).

3

This procedure is mandatory, as the legislature made clear in subsection (E): "The provisions of subsection (D) are jurisdictional and any order granting a change of name pursuant to subsection (D) that fails to comply with any provision of subsection (D) is void ab initio." Code § 8.01-217(E).

Code § 8.01-217(D) first requires the court to determine whether "good cause exists for consideration of [the] application." Subsection (D) limits the court's consideration in this good-cause analysis to only "the reasons alleged in the application for the requested change of name." This step is akin to a court's review of a complaint on demurrer: the court looks to the form of the application and assesses its sufficiency assuming that all material facts, implied facts, and reasonable inferences from those facts that are properly alleged in the application are true. *Cf. Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013). If the application includes the required information set forth in Code § 8.01-217(B) and alleges legitimate, nonfrivolous reasons supporting a name change, then good cause exists to accept the application for consideration. If the court finds that good cause does not exist, then it must dismiss the application.

If good cause does exist to consider the application, the court must "accept" the application and follow the procedures mandated in Code § 8.01-217(D) for considering it on the merits. The circuit court's next step following acceptance is to deliver a copy of the application to the Commonwealth's Attorney for that jurisdiction and for any jurisdiction in Virginia where the applicant was convicted resulting in probation, incarceration, or registration as a sex offender. Upon receipt of the application, the Commonwealth's Attorney for the jurisdiction where the application was filed is then entitled to file a response with the circuit court within thirty days.

The statute then mandates that the court "shall conduct a hearing":

> [t]he court shall conduct a hearing on the application and may order a change of name if, after receiving and considering evidence concerning the circumstances regarding the requested change of name, the court determines that the change of name (i) would not frustrate a legitimate law-enforcement purpose, (ii) is not sought for a fraudulent purpose, and (iii) would not otherwise infringe upon the rights of others. Such order shall contain written findings stating the court's basis for granting the order.

Code § 8.01-217(D). With the application and the Commonwealth's response in hand, the court must "receiv[e] and consider[] evidence," if any, at the hearing regarding the circumstances of the requested name change. Only then does the statute permit the court to make a merits determination whether to grant or deny the application.

The statute lists three conditions the court must determine are not present before granting any name change under Code § 8.01-217(D). We recently characterized these three enumerated disqualifying conditions as "threshold matter[s]," the presence of any one being sufficient to require denial. *Jordan*, 295 Va. at 75. Finding that a name change would not implicate the conditions, however, "is only the beginning of the inquiry. Even when those circumstances are absent, the court is not required to grant the petition—it retains broad discretion to grant or to deny the petition." *Id.* The court's reasons for denying an application may be "broader than the confines of" Code § 8.01-217(D), taking into account the applicant's specific circumstances, implications of a name change for the public, and other appropriate factors. *Id.* at 76. If the court grants the requested name change, it must include in the order written findings setting forth its reasons for doing so. The statute does not require written findings if the court denies the name change.

In sum, courts have significant discretion to decide the *merits* of a name change petition. In doing so, however, they are bound to follow the *procedure* the General Assembly articulated

5

in Code § 8.01-217(D). With that procedure in mind, we now turn to the circuit court's consideration of Leonard's application.

In interpreting a court's ruling, "we turn to the well-established principle that a court speaks only through its written orders." *Conyers v. Martial Arts World of Richmond*, 273 Va. 96, 103 (2007). The order here states that the circuit court denied Leonard's application and dismissed the case because "good cause does not exist for consideration of the application." Under the principles articulated above, we review the circuit court's determination of whether Leonard's application was procedurally sufficient to "accept," acknowledging that this Court cannot reverse "merely because it would have come to a different result in the first instance," but only if the circuit court committed "a clear error of judgment" about which reasonable jurists could not disagree. *Lawlor v. Commonwealth*, 285 Va. 187, 212–13 (2013) (first quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008), then quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

Leonard's reasons are straightforward: receiving a name change would further her male-to-female transition and promote her health. She attached supporting medical records to her application and alleged that a name change would not interfere with her incarceration. The application contained the information required by Code § 8.01-217(B) and articulated legitimate, nonfrivolous reasons supporting the requested name change. *See In re Brown*, 289 Va. 343, 349 (2015) ("[T]he fact that an applicant is transgender and is changing their name to reflect a change in their gender identity cannot be the sole basis for a finding by a trial court that such an application is frivolous and lacks good cause." (decided under the pre-2014 Code § 8.01-217)). Had the circuit court accepted the application and followed the statutory procedures for consideration on the merits, including "conduct[ing] a hearing . . . [and] receiving and

6

considering evidence," as specified in subsection (D) as presently worded, it may have had a variety of reasons to ultimately deny Leonard's application that were within its discretion. But the order indicates that the circuit court denied the application prior to that stage, where the statute strictly limits review to assessing the application's procedural sufficiency. Under the standard for good-cause review articulated in Code § 8.01-217(D), Leonard's application set forth good cause to be accepted for merits consideration. Accordingly, the circuit court abused its discretion in denying the application for lack of good cause.

We additionally note that the circuit court referred the application to the Commonwealth's Attorney for a response before denying the application for lack of good cause without a hearing four days after the response was received. This procedure was inconsistent with the strict mandate of Code § 8.01-217(D). Under the statute, a court must refer an application to the Commonwealth's Attorney after finding that good cause exists to consider it on the merits, but it cannot do so prior to making that initial determination. After finding that good cause exists, the court must make the referral and then hold a hearing. Only after the hearing may the court exercise its substantial discretion in deciding on the merits whether to grant the name change. *See Jordan*, 295 Va. at 75–76. The circuit court thus also abused its discretion by deviating from the statutory process for assessing a name-change application. Code § 8.01-217(D)–(E); *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 253 (2017) ("'[A] court also abuses its discretion if it inaccurately ascertains [the] outermost limits' of the range of choice available to it." (quoting *Lawlor*, 285 Va. at 213)).

### III. CONCLUSION

The circuit court abused its discretion by finding that good cause did not exist for consideration of Leonard's application and by employing an inappropriate procedure to make

that determination.  Accordingly, we will reverse the circuit court's ruling and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*