COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia


SHARON MORGAN

v.        Record No. 0350-25-1

THE CITY OF NORFOLK

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 20, 2026


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Norman A. Thomas (Joseph T. Waldo; Brian G. Kunze; Blake A.
Willis; Norman A. Thomas, PLLC; Waldo & Lyle, P.C., on briefs),
for appellant.

Kristopher R. McClellan (Adam D. Melita; City Attorney's Office,
on brief), for appellee.


This appeal arises from an inverse condemnation action brought by Sharon Morgan against

the City of Norfolk ("the City"). In her complaint, Morgan alleged that the City damaged her house

during the construction of Bruce's Park Pump Station #152 (the "Project"). The Project was a

multi-phase replacement and construction of the water and sewer infrastructure. After a motion *in

limine*, the Circuit Court of the City of Norfolk granted the City's motion to preclude Morgan from

introducing evidence of damages from Phases I and II of the Project. Then, after a bench trial, the

circuit court dismissed in part and granted in part the petition for declaratory judgment. The circuit

court determined that the City did not take Morgan's property, except for a 15 square foot

temporary easement for 6 months to construct an asphalt pathway. Following this ruling, the parties

stipulated that Morgan was entitled to a $6.10 award for the City's taking.[1]  After a final hearing, the circuit court awarded Morgan $29,828 in attorney fees and costs.

Morgan contends the circuit court erred by: (1) granting the City's motion *in limine* on the statute of limitations; (2) granting the City's motion to strike and finding that the City's only taking was the 15 square foot temporary easement; (3) limiting Gruelle's testimony for the just compensation trial; and (4) awarding $29,828 in attorney fees and costs.

BACKGROUND

Morgan is the owner of a house in Norfolk, Virginia (the "Property") that is situated close to where the Project took place.  Phase I of the Project occurred from 2015 to 2016 and included the construction of the pump station.  Phase II took place from 2015 to February 2017 and consisted of construction and replacement of water and sewer pipes connected to the pump station.  Phase IIIA occurred from August 2020 to January 2022 and included the replacement of water and sewer pipes "directly adjacent to the Property."

On April 26, 2016, Morgan wrote a letter to the City complaining of "paint chipping," "cracks" in her wall, and a "broke[n] natural gas line in two different spots" due to the City's work on the Project.  Specifically, Morgan stated that the damage was from "the banging of huge metal plates into the ground" that "literally shake [her] entire house."  In her letter, Morgan stated that she noticed the cracking in February 2016.  The City responded to Morgan's letter, and, after an investigation, denied liability for her damages.

On February 2, 2021, Morgan filed a petition for declaratory judgment against the City but thereafter nonsuited the case on June 1, 2022.  Then, on June 16, 2022, Morgan filed a new petition

---

[1] Prior to this stipulation, the circuit court granted the City's motion *in limine* to limit Morgan's expert witness testimony to the fair market rental value of the 15 square foot temporary taking and exclude the expert's "other theories and opinions of damages."  Morgan preserved her objection to the ruling on just compensation in the stipulation order.

for declaratory judgment alleging that the City had damaged her Property, without payment of just compensation, in violation of Article I, Section 11 of the Constitution of Virginia.

In July 2023, the City filed a motion *in limine* to exclude evidence of the City's actions and evidence of causation of damages to the Property prior to February 2, 2018.[2] The City argued that the statute of limitations precluded Morgan from introducing evidence of the City's actions or of damages to the Property that occurred more than three years before the filing of her initial petition. As such, the City argued that Morgan was limited to damages sustained during Phase IIIA of the Project, because Phase II ended in February 2017 and no additional work was done until the start of Phase IIIA in August 2020. On August 7, 2023, the circuit court heard the City's motion *in limine* and entered an order granting the City's motion to exclude evidence of damages to the Property prior to February 2, 2018.

In August 2023, after a bench trial on Morgan's petition for declaratory judgment, the circuit court entered an order granting the petition in part and dismissing in part. The circuit court found that the City had "taken, for a period of approximately six (6) months, a temporary easement to construct an asphalt pathway located in the front left corner of [Morgan's] Property without just compensation." The circuit court dismissed the portions of the petition regarding Morgan's allegations that the City had "taken and/or damaged [Morgan's] [P]roperty by causing vibrations and concussions to physically enter and shake the Property" because some of the damages alleged occurred outside of the statute of limitations period, and, as to the other damages, Morgan failed to prove the City's actions caused them.

Before a jury trial regarding the amount of just compensation owed by the City, the circuit court held a hearing on the City's motion *in limine* to limit Morgan's expert witness's testimony.

---

[2] Pursuant to Code § 8.01-229(E)(3), the statute of limitations period is calculated based off the filing date of her initial, nonsuited petition, which was February 2, 2021.

Morgan sought to introduce evidence that because the Project "made the whole Property unrentable" she was entitled to just compensation based on the entire Project. Dennis Gruelle, Morgan's expert, stated that he was looking "at the effect on the whole property" and that "construction and the closing of the road" would prohibit her from renting her Property "during the duration of the [P]roject." Gruelle's calculations for just compensation included "renting the entire property." The circuit court found that Gruelle's testimony went beyond its factual finding at the liability trial and granted the City's motion limiting his testimony.

Finally, the circuit court held a hearing on Morgan's motion for reimbursement of fees and costs pursuant to Code § 25.1-420.[3] Morgan sought $119,856.67 in attorney fees and costs. After the hearing, the circuit court entered an order awarding Morgan $29,828 in attorney fees and costs. Morgan appeals.

## ANALYSIS

I. Whether a portion of Morgan's inverse condemnation claim was time barred

Morgan argues that the stabilization doctrine, as articulated in *United States v. Dickinson*, 331 U.S. 745 (1947), extended the accrual date of her cause of action until the Project ended in January 2022.

---

[3] Code § 25.1-420 states:

> If a declaratory judgment proceeding is instituted pursuant to § 8.01-187 by the owner of any . . . real property because of use of his property in any program or project undertaken by a state agency, and . . . the court renders a judgment for the plaintiff in such proceeding and awards compensation for the damaging or taking of property . . . the court . . . shall determine and award . . . plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court, . . . reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding.

"[T]he date of accrual of . . . [a] cause[] of action is a mixed question of law and fact that this Court reviews de novo." *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n.*, 289 Va. 34, 58 (2014).

"Virginia law recognizes inverse condemnation as a viable theory of recovery for de facto violations of Article I, Section 11 of the Constitution of Virginia." *AGCS Marine Ins. Co. v. Arlington County*, 293 Va. 469, 477 (2017). Inverse condemnation permits recovery when "property is taken or damaged for public use" – thereby allowing the owner to "sue upon an implied contract that he will be paid therefor for such amount as would have been awarded if the property had been condemned under the eminent domain statute." *Id.* (emphases omitted) In Virginia, the statute of limitations for an inverse condemnation action is three years. *See* Code § 8.01-246(A)(4).

> Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. Thus, an action for inverse condemnation is an action seeking redress for the government's action in limiting property rights the landowner holds. In that regard, the act giving rise to the [claim] is not an act aimed at the property, but rather an act that limits the landowner's ability to exercise his property rights without paying the landowner for that limitation.

*Byler v. Va. Elec. & Power Co.*, 284 Va. 501, 508 (2012) (quoting *Richmeade, L.P. v. City of Richmond*, 267 Va. 598, 602-03 (2004)). The statute of limitations for an inverse condemnation claim begins to run when the property first suffers damage as a result of the government's action. *See Bethel Inv. Co. v. City of Hampton*, 272 Va. 765, 770 (2006).

Phase I of the Project occurred from 2015 to 2016, Phase II was from 2015 to February 2017, and Phase IIIA took place from August 2020 to January 2022. Morgan began noticing damage to her home in February 2016. Phases I and II were concluded by March 2017. Then, around 4 years after Phases I and II concluded, Morgan filed her first petition for declaratory

- 5 -

judgment. Therefore, any damages that occurred from Phases I and II were properly excluded, and Morgan could only seek recovery from alleged damages incurred during Phase IIIA.

Accordingly, the circuit court was correct in its factual finding that Phases I and II were outside the period of the statute of limitations and that Morgan could only seek relief for any alleged taking from the three years prior to her filing her first petition for declaratory judgment.

Morgan acknowledges that under Virginia law the statute of limitations for an inverse condemnation claim is three years. However, she contends that the statute of limitations did not begin to run when the Property first suffered damage as a result of the City's acts. Rather, under the doctrine of stabilization, recognized by federal courts, the cause of action did not accrue until the Project was completed in January 2022.

Virginia courts have not adopted the stabilization doctrine for inverse condemnation actions under the Virginia Constitution, and we conclude that we need not address whether we should do so here because that doctrine would be inapplicable to the facts of this case.

The *Dickinson* case, which first implemented the stabilization doctrine, involved flooding to a landowner's property after the construction of a dam. The Supreme Court disagreed with the government that the statute of limitations had run because "the overflow due to rises in the level of the river—is not a single event; it is continuous." *Dickinson*, 331 U.S. at 749. In other words, the statute of limitations did not begin to run at the first instance of increasing water levels, rather, the statute of limitations began to run when "the situation bec[ame] stabilized." *Id.*

Since the Supreme Court's decision in 1947, the holding in *Dickinson* has been narrowed. In *Etchegoinberry v. United States*, 165 Fed. Cl. 696, 711 (2023), *aff'd*, 132 F.4th 1374 (Fed. Cir. 2025), the Court noted that "stabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." Thus, the Court was clear in holding that once

the government has effected a permanent taking, the statute of limitations begins to run. Here, by Morgan's allegations, a permanent taking occurred when the City caused cracking in Morgan's walls in February 2016. But Morgan argues that the statute of limitations could not begin to run until after the Project's completion because that is when she could "determine the extent of the damages." However, the Court in *Etchegoinberry* specifically rejected the theory proposed by Morgan. The Court clearly stated that stabilization occurs when "the government has effected a permanent taking, *not when the process has ceased or when the entire extent of the damage is determined*." *Etchegoinberry*, 165 Fed. Cl. at 711 (emphasis added).

For the reasons stated above, the circuit court properly rejected Morgan's theory that the stabilization doctrine applies to this case and did not err in ruling that damage suffered during Phases I and II was barred by the statute of limitations.

## II. Whether Morgan presented sufficient evidence that the City took or damaged the Property through concussions and vibrations during Phase IIIA

Morgan argues that the circuit court erred in granting the City's motion to strike and ruling that Morgan failed to provide sufficient evidence that the City caused damage to her Property through concussions and vibrations.

"In reviewing the decision of a trial court to strike a plaintiff's evidence, we must consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the plaintiff." *Jenkins v. County of Shenandoah*, 246 Va. 467, 469 (1993). "Furthermore, any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the plaintiff." *Id.* "A circuit court may grant a motion to strike at the conclusion of a plaintiff's evidence 'only where "it is conclusively apparent that plaintiff has proven no cause of action[.]"'" *Gloss v. Wheeler*, 302 Va. 258, 278 (2023) (alteration in original) (quoting *Int'l Paper Co. v. County of Isle of Wight*, 299 Va. 150, 170 (2020)). A "reasonable inference does not include speculative assumption." *Bly v. S. Ry. Co.*, 183 Va. 162, 176 (1944).

The record reflects that before Phase IIIA started, Morgan had cracks in her walls, her kitchen counter was not level and "receding from its moor," and her house was off its foundation. After the City began its work for Phase IIIA, Morgan's house developed new cracks and the gap in the kitchen counter worsened.

Morgan testified that she experienced strong enough vibrations that her "cheeks would shake," that "it was always vibrating," and there was "always something moving" in the house. However, despite these assertions, Morgan could not testify specifically as to when these cracks started showing up, other than that they started showing up around the month of December in 2020. Indeed, the largest shaking that Morgan experienced was after a giant steel plate was dropped outside her house, which she described as a "mini earthquake." Morgan testified that the vibration caused her and other family members to run outside "to find out what was going on" and they found a large plate on the ground with smoke "puffing up from it." However, despite this "mini earthquake," Morgan did not notice any immediate changes to her house after the plate dropped.

Even in the light most favorable to Morgan, the circuit court was left to speculate that it was the City that caused the cracks in Morgan's house. There was evidence that prior to the beginning of Phase III, the house was already off its foundation, the kitchen counter was not level and "receding from its moor," and there were already existing cracks throughout the house. Although Morgan testified that during Phase IIIA she noticed "impacts or damages to [her] home after all the vibrations," she did not provide evidence beyond her assumption that it was the City's construction causing the damage. Morgan failed to present any expert testimony or evidence regarding the vibratory levels during construction or what vibratory levels would be necessary to cause structural damage to a residential building. Further, Morgan did not notice cracking occurring during the vibrations, concussions, and giant plate dropping, but simply testified that cracks showed up during the same general time frame as the Phase IIIA of construction. Also, although the kitchen counter

alignment got worse, there was evidence that Morgan continued to use the kitchen in its unlevel state.

Accordingly, without any evidence establishing causation, it would be "speculative assumption" to conclude that the City caused the cracking in Morgan's house based solely on the testimony she provided. *Bly*, 183 Va. at 176. Thus, Morgan "has proven no cause of action" and the circuit court did not err in granting the City's motion to strike. *Gloss*, 302 Va. at 278.

### III. Whether the circuit court erred in excluding certain evidence from Morgan and her expert regarding damages

"Generally, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard." *Dean v. Bd. of Cnty. Supervisors*, 281 Va. 536, 540 (2011) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)).

Morgan argues that the circuit court erred in excluding evidence from her expert regarding just compensation. Morgan also argues that her constitutional right to a trial by jury to determine just compensation was denied, but there was no ruling by the circuit court denying her of this right. In fact, Morgan stipulated with the City the amount of the just compensation for the property temporarily taken, thereby leaving no issue for a jury to resolve. Accordingly, we need not address whether the circuit court erred in depriving Morgan of her right to have a jury determine just compensation.

The terms of the implied contract of Article I, Section II of the Constitution of Virginia "require[s] the government to pay the landowner 'such amount as would have been awarded . . . if the property had been condemned under the eminent domain statutes.'" *Richmeade, L.P.*, 267 Va. at 601 (quoting *Nelson County v. Coleman*, 126 Va. 275, 279 (1919)). "The compensation to which the owner is entitled is the full and perfect equivalent of the property taken." *Anderson v. Chesapeake Ferry Co.*, 186 Va. 481, 491 (1947). Just compensation for a temporary taking is the fair rental value of the property taken for the duration of the take. *Id.* at 492.

Here, the circuit court determined that the City took "for a period of approximately six (6) months, a temporary easement to construct an asphalt pathway located in the front left corner of [Morgan's] Property without just compensation."  Therefore, the damages recoverable would be the fair rental value of the 15 square foot area for 6 months.

Morgan sought to introduce evidence that because the Project "made the whole Property unrentable" she was entitled to just compensation based on the entirety of the Project.  Gruelle stated that he was looking "at the effect on the whole property" as the basis for his proffered opinion and that "construction and the closing of the road" would prohibit her from renting her Property "during the duration of the [P]roject."  Indeed, Gruelle's calculations for just compensation included "renting the entire property."  Gruelle's testimony for the just compensation Morgan was entitled to went beyond the "fair rental value . . . for the temporary possession and use by the government" of the 15 square foot area.  *Anderson*, 186 Va. at 493.  By allowing the proffered testimony, a jury would be permitted to consider just compensation outside the bounds of the finding from the trial on liability and, in essence, supplant the circuit court's authority to determine the scope of the taking.  Accordingly, the circuit court did not abuse its discretion in limiting this evidence.[4]

IV.  Whether the circuit court erred in its award of attorney fees and costs

Morgan argues that the circuit court abused its discretion by "failing to liberally construe Code § 25.1-420," by placing significant weight on the "'results obtained' factor coupled with the court's expressly factored-in displeasure with Morgan's counsel."

"We review an award of attorney's fees for abuse of discretion."  *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252 (2017).

---

[4] As noted, it does not appear that Morgan was prevented from having Gruelle testify or having a jury determine just compensation.  Rather, the circuit court simply limited Gruelle's testimony to the court's finding at the liability trial that Morgan could only seek damages for the fair rental value of the 15 square foot area for 6 months. Obviating the need for having a jury determine the just compensation, Morgan and the City stipulated that the damages were $6.10.

The three principal ways a court abuses its discretion are "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Id.* at 252-53 (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 429 (2012)).

"Under Code § 25.1-420, a court 'shall determine and award' a plaintiff who successfully litigates an inverse condemnation proceeding 'such sum as will, in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding.'" *Town of Iron Gate v. Simpson*, 82 Va. App. 38, 56 (2024).

The Supreme Court has identified seven factors for courts to consider when weighing the reasonableness of an award of attorney fees. *Lambert*, 293 Va. at 254. These factors are:

[(1)] the time and effort expended by the attorney, [(2)] the nature of the services rendered, [(3)] the complexity of the services, [(4)] the value of the services to the client, [(5)] the results obtained, [(6)] whether the fees incurred were consistent with those generally charged for similar services, and [(7)] whether the services were necessary and appropriate.

*Id.* (alterations in original). In its order, the circuit court stated that it used these factors to determine the reasonableness of fees and costs incurred.

After briefing and a hearing on the issue, the circuit court entered a six-page order detailing the procedural stages of litigation and the reasonableness of the attorney fees and costs incurred throughout. Indeed, the circuit court still awarded almost $30,000 for the $6.10 award, not including the cost of the expert witness that the City already paid Morgan's counsel for. Although Morgan argues that the circuit court lowered the award of attorney fees and costs because of its "expressly factored-in displeasure with Morgan's counsel," the court's order does not reflect that any alleged displeasure was a factor in the court's calculation. In fact, there were multiple instances

of the court stating that certain attorney fees and costs were reasonable and necessary and some actions by Morgan's attorneys were "certainly necessary and prudent." Although not required, the circuit court parsed out the requested attorney fees and costs and determined on an item-by-item basis what was reasonable and necessary under the factors enumerated in *Lambert*. The record is devoid of any evidence that the circuit court gave significant weight to its alleged "displeasure with counsel" when it determined the award.

Accordingly, we hold that the circuit court did not abuse its discretion in its award of attorney fees and costs.

CONCLUSION

For the reasons stated above, we affirm the circuit court's rulings.

*Affirmed.*